<hr/>

## AARONSON *v.* DEUTSCH.

*(Circuit Court, E. D. Arkansas.* July 25, 1885.)

1. ARKANSAS STATUTE OF ASSIGNMENTS—POSSESSION OF ASSIGNED PROPERTY.

Under the Arkansas statute, if the parties to a deed of assignment for the benefit of creditors agree, at the time of the execution of the deed, that the possession of the property assigned shall be delivered to the assignee before he has given the bond and filed the inventory required by law, and that agreement is carried into effect, it avoids the deed, and is good ground for an attachment against the debtor.

2. RULE AS TO VALIDITY OF DEEDS VALID IN THEIR INCEPTION—DOES NOT APPLY, WHEN.

The rule that a deed valid in its inception will not be rendered invalid by any subsequent fraudulent or illegal act of the parties has no application when the fraudulent or illegal act is the consummation of an illegal agreement made contemporaneously with the deed. In such case the illegal act is part of the original design, and the deed is void *ab initio.*

At Law.

*T. B. Martin, J. M. Taylor,* and *Cohn & Cohn,* for plaintiff.

*W. E. Hemingway,* for defendant.

CALDWELL, J. This case turns upon the validity of a deed of assignment for the benefit of creditors. Much of what is said in the opinion in the case of *Rice* v. *Frayser, ante,* 460, is applicable to this case also. There are some points of difference which will be noticed. The plaintiff claims the deed of assignment is fraudulent in fact, and that it is void by reason of an agreement, carried into effect, to transfer the possession of the property to the assignee upon the delivery of the deed, and before the latter had given the bond and filed the inventory required by law. There is much in the evidence tending to show that the assignment, which prefers a relative of the debtor for a sum sufficient to swallow up the whole estate, was one step in a scheme to delay and defraud his creditors. It does not matter that the assignee was not a party to this scheme. He does not stand on the footing of a purchaser for value, and his participation in the fraudulent purpose does not have to be shown. But, in fact, he did agree to and participate in an act which was in violation of the statute, and therefore a fraud upon the law.

It was the understanding of the parties to the deed that possession of the assigned property should be delivered to the assignee upon the execution and delivery of the deed, and before the assignee had qualified by giving bond and filing an inventory. Accordingly, im-

v.24F,no.8—30

mediately after the execution of the deed the assignor put the assignee in possession of the property. The key to the store-house containing the property, and the property itself, was delivered to the assignee; the assignor withdrew from the place and abandoned all watch or care over the property, leaving the assignee to exercise absolute and unrestricted dominion over it. The assignee had not given bond and filed the inventory up to the time the goods were attached. The contention of the learned counsel for the defendant is that, because this illegal understanding and action of the parties was not in terms provided for in the deed, the validity of the assignment is not affected thereby; and that the wrongful possession of the assignee was a matter occurring subsequent to the execution of the deed, and cannot affect its validity. The mere act of taking possession was subsequent to the execution of the deed; but it was done in pursuance of an understanding had at the time of the execution of the deed, and when that fact is shown, its legal effect is the same as if the deed had provided for it. When the parties to the deed enter into an agreement to do an act in violation of the requirements of the statute of assignments, and that agreement finds expression in the deed, the instrument is fraudulent and void in law upon its face. Where such an agreement is made, but is not disclosed on the face of the deed, it must be proved; and when it is proved, and it is also shown that the parties are carrying out their illegal purpose, the effect upon the validity of the assignment is precisely the same as if the illegal purpose had been declared on the face of the deed.

The rule which the defendant seeks to invoke, that a deed valid in its inception will not be rendered invalid by any subsequent fraudulent or illegal act of the parties, has no application where the fraudulent or illegal act is the consummation of an illegal agreement made contemporaneously with the deed; and the rule must be taken as not intended to deny that such subsequent acts may reflect light back upon the original intent, and help us to ascertain that correctly; and if the illegal acts are part of the original design, the deed is void *ab initio.* *Shultz* v. *Hoagland,* 85 N. Y. 464. Where the assignment is tainted with either moral or legal fraud, the property does not pass. Burrill, Assignm. § 501. In the brief filed by defendant's counsel it is said:

"To place an assignee in possession of goods, without bond or inventory, puts it in his power to defraud creditors; he may make way with or secrete the goods, if he can do so without the creditors' knowledge, but he has less power to do it than the debtor, for if he is seen doing it, being the trustee of the creditors, they through chancery can control his conduct and enforce their rights."

Speculation as to the efficacy of the statutory provision in question, to prevent fraud, is bootless. *Ita lex scripta est.* Courts must give it effect. And a deliberate agreement, in or out of the deed, made at the time and carried into effect, to violate the statute, is a fraud upon the

statute, and a fraud upon the legal rights of creditors, which the law will redress by removing the fraudulent barrier to the assertion of their legal rights against their debtor. It is useless to inquire whether equity could give relief in such case. Conceding that it could, its jurisdiction is not exclusive, and it is certain that the parties to the fraud cannot insist that those injured by it shall be denied redress at law on their legal demands. The case of *Clayton* v. *Johnson*, 36 Ark. 406, gives no sanction to the proposition that where an assignment is void for matter either in or *dehors* the deed, that creditors must appeal to a court of equity to purge it of the fraud, conform it to the law and the court's ideas of justice, and enforce it as thus reformed. All the court said in that case about invoking the powers of the court of equity was to announce the familiar rule that where the assignment was valid, and the assignee failed to qualify, the creditors might apply to chancery for the appointment of an assignee who would qualify and execute the trust. See page 422 of opinion. Undoubtedly, if a trust is once properly created, the courts will not allow it to fail for want of a trustee. But it was never heard that a court of equity could metamorphose a void deed or trust into a valid one. But argument on this question, in this state, was set at rest by the judgment of the supreme court in *Teah* v. *Roth*, 39 Ark. 66. That was a case in which the deed authorized the assignee to sell the assigned property in a mode different from that prescribed by the statute. The creditors of the assignor, believing this rendered the deed fraudulent and void, and that it constituted a good ground of attachment, sued out an attachment and levied on the assigned property in the hands of the assignee. The court say:

"SMITH, J. In these cases the plaintiffs brought actions against the maker of an assignment for the benefit of certain enumerated creditors, and caused attachments to be levied upon portions of the stock of goods assigned. The defendant interposed no defense to the merits, but contested the ground of attachment, which was that he had fraudulently disposed of her property; the fraud relied upon being the making of said assignment. The attachments were sustained, and we affirm the judgments below upon the authority of *Raleigh* v. *Griffith*, 37 Ark. 150."

The court gave no consideration to the suggestion that it was the duty of non-assenting creditors to file a bill to perfect a void assignment. The laws of this state are exceedingly liberal to debtors in the matter of assignments for the benefit of their creditors. They may make preferences, exact releases, and appoint their own assignee. They may, in a word, make their own bankrupt law. In view of these large powers of the debtor, the legislature has prescribed a few wholesome rules for the protection of the creditors, and these the debtor cannot strike down or evade with impunity. They are mandatory, and any stipulation in the deed, or any agreement of the parties to the deed at the time of making it, carried into effect, contravening them, annuls the assignment. *Rice* v. *Frayser, ante,* 460.