### BADGETT v. JOHNSON–FIFE HAT CO.

(Circuit Court of Appeals, Eighth Circuit. February 14, 1898.)

#### No. 939.

1. TRIAL—INSTRUCTION—WAIVER OF ERROR.

A party cannot object that the court predicated an instruction on a state of facts unsupported by the evidence, when he himself asked an instruction involving the same state of facts.

2. ASSIGNMENT FOR BENEFIT OF CREDITORS—VALIDITY—EVIDENCE.

The incorporation into a deed of assignment of a provision that the assignee should not take possession of the property until he had filed an inventory and bond, which is only what is required by the statute in every case of assignment, does not render inadmissible evidence aliunde to show that a secret agreement to the contrary existed between the parties.

3. SAME—EVIDENCE.

Upon an issue as to the existence of a secret agreement between an assignor and his assignee that the latter should take possession of the assigned property at once, in violation of the statute, evidence of acts of possession by the assignee, immediately following the execution of the deed, is admissible to be considered with other circumstances.

In Error to the United States Court of Appeals in the Indian Territory.

This is an action by attachment by the Johnson-Fife Hat Company against J. D. Blosser, in which W. R. Badgett interpleaded, claiming the property attached by virtue of a deed of general assignment made by Blosser to him prior to the attachment. A judgment against the interpleader was affirmed by the court of appeals for the Indian Territory, and he brings the case on error to this court.

William T. Hutchings, for plaintiff in error.

John B. Turner and James B. Burckhalter (George B. Denison and N. B. Maxey, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge. On the 9th day of November, 1894, one J. D. Blosser, a merchant of Chelsea, Cherokee Nation, Indian Territory, executed and delivered a deed of assignment to the interpleader, W. R. Badgett, conveying to him, in trust, the goods and merchandise in question. The deed conveyed all the property of the said assignor for the benefit of creditors, with preferences, as was permissible under the statute regulating assignments applicable to that territory. This deed was delivered to the assignee perhaps the day following its execution, but the inventory and bond required by statute to be made out by the assignee were not filed with the clerk of the court until November 24, 1894. The deed of assignment contained the following provision:

"That the said Badgett shall first, and before taking possession of, or controlling, said property, comply with the law as to the inventory and bond, as provided in such cases. He shall then, pursuant to law, proceed to sell the goods, wares, merchandise, and fixtures, and to collect the notes and accounts and other indebtedness, and with the proceeds of said sales and collections pay to my creditors as follows." ·

On the 16th day of November, 1894, the defendant in error, Johnson-Fife Hat Company, instituted suit against J. D. Blosser to recover a debt of $212.35, which action was aided by an attachment proceeding under which the goods and merchandise in question were seized. On May 9, 1895, W. R. Badgett, plaintiff in error, filed in said cause his interplea, claiming the ownership and possession of said property under the assignment aforesaid. On the issues tried between these parties to a jury there was a verdict and judgment against the interpleader. From that judgment an appeal was prosecuted to the court of appeals of the territory, where the judgment of the court below was affirmed. 38 S. W. 667. To reverse this judgment the interpleader brought the case to this court on writ of error.

The only questions presented for review, under the assignment of errors, arise on the giving and refusing to give certain instructions on the trial and as to the admission of certain evidence. The instruction refused is as follows:

"The court instructs the jury that the deed of assignment offered in evidence in this case is valid on its face, and vested the legal title to the property in controversy in this suit in the assignee named therein and the interpleader herein, W. R. Badgett, unless some fraud on the part of the assignor, J. D. Blosser, prior to or contemporaneous with the execution of the deed, known to and participated in by the assignee, W. R. Badgett, invalidated it. If, therefore, the deed of assignment in question was free from fraud at the time of its execution and delivery, no subsequent agreement between the assignor and assignee to disregard it, and no subsequent fraudulent acts on their part with respect to the assigned property, will invalidate it."

The instructions given by the court complained of are as follows:

"The court instructs you that although there is a clause in the deed of assignment offered in evidence in this case which prohibits the assignee from taking charge or control of the property assigned until he had filed his inventory and bond as the law provides, yet if you believe from the evidence in this case that at the time the assignor, Blosser, delivered the deed of assignment to the assignee, Badgett, that he and the assignor entered into an agreement or understanding by which the assignee was to take possession of the assigned property before he filed his inventory and bond, and that the assignee, in pursuance of such understanding, did take charge of said property, either by himself or agent, before he filed his inventory and bond, that then such facts would render the assignment fraudulent and void in law, and you should find for the plaintiffs or attaching creditors. And in determining whether or not there was such an agreement or understanding between the assignor, Blosser, and the assignee, Badgett, you have a right to take into consideration all the facts and circumstances surrounding the case. And if you believe from the evidence and all the circumstances surrounding the case that there was such an understanding, you will find for the plaintiff or attaching creditors. The court instructs the jury that the deed of assignment offered in evidence in the case is valid on its face, and vested the legal title to the property in controversy in this suit in the assignee named therein, and the interpleader herein, W. R. Badgett, unless some fraud in law, either express or implied, on the part of the assignor, J. D. Blosser, prior to or contemporaneous with the execution of the deed, known to and participated in by the assignee, W. R. Badgett, invalidates it. If, therefore, the assignment in question was free from fraud, either express or implied, at the time of its execution and delivery, no subsequent agreement between the as-

signee and assignor to disregard it, and no subsequent fraudulent acts on their part with respect to the assigned property, will invalidate it."

The statute of the state of Arkansas (section 305, Mansf. Dig., in force in the Indian Territory) contains the following provision:

"In all cases in which any person shall make an assignment of property, whether real, personal, mixed or choses in action, for the payment of debts: before the assignee thereof shall be entitled to take possession, sell or in any way manage or control any property so assigned, he shall be required to file in the office of the clerk of the court exercising equity jurisdiction a full and complete inventory and description of such property; and also make and execute a bond to the state of Arkansas in double the estimated value of the property in said assignment, with good and sufficient security, to be approved by the clerk of said court: conditioned," etc.

There was some evidence in the case tending to show that on the next day, which was Saturday, after the execution and delivery of the deed of assignment, the assignee went to the store at Chelsea and gave some directions to the clerk in charge thereof about taking an inventory of the stock of goods, and that on the Monday following said clerk went to where the assignee lived, and delivered to him the inventory and the key which he had to the store building. There was another key to this building, which was held by the assignor. These were practically the acts evidencing possession by the assignee prior to the levy of the writ of attachment.

This fact alone was not sufficient to avoid the assignment, as an act of omission or commission by the assignee after the passing of the title to him by operation of the deed, in trust for the benefit of creditors, could not alone have the effect to defeat the trust. Lowenstein v. Finney, 54 Ark. 129, 15 S. W. 153; Aaronson v. Deutsch, 24 Fed. 465. This proposition of law is not controverted by either counsel. But the insistence on the part of the defendant in error is that if, contemporaneous with the execution of the deed of assignment, there was any secret understanding between the assignor and the assignee that the assignee, in advance of filing the inventory and bond, should proceed to take possession of the property, or exercise dominion over it, by virtue of his office, and in pursuance thereof he took possession and assumed control thereof prior to the filing of the bond and inventory, that would vitiate the assignment. This accords with the rulings of the supreme court of Arkansas and of the federal court of this circuit. Smith v. Patterson, 57 Ark. 537, 22 S. W. 342; Rice v. Frayser, 24 Fed. 460; Aaronson v. Deutsch, supra; Lowenstein v. Finney, supra; Gilkerson-Sloss Commission Co. v. London, 53 Ark. 88, 13 S. W. 513.

The reason of the rule is stated by the court in the case last above cited:

"The intention of this statute is manifest. Before the assignee can lawfully take possession of the property assigned, he must file an inventory of the property conveyed to him, and execute a bond to faithfully perform his duties. The object of this provision is the protection of creditors and the prevention of fraud. The inventory is to show the property assigned, and the bond to secure all the parties concerned against loss on account of the failure of the assignee to perform his duties; and both are required to be filed before the assignee can lawfully have an opportunity to make a fraudulent disposition of the property. Until they are filed it is the duty of the assignor to retain possession and control and

take care of and protect the property. The delivery of possession to the assignee for any purpose prior to the time fixed by law, which would enable him to do what the statute intended to prevent, would be clearly unlawful. The purpose can avail nothing if the possession given afforded the assignee the opportunity to commit frauds that the statute intended to prevent by requiring the bond and inventory to be filed first."

It must be confessed that it is difficult to find in this record any tangible satisfactory proof of an express or secret understanding between the assignor and assignee, either before or contemporaneously with the execution and delivery of the deed of assignment, that the assignee should take possession of the property before complying with the statute, outside of one or two answers which counsel for defendant in error was permitted to put into the mouth of one of his own witnesses under a form of cross-examination. This mode of examination and this character of evidence, however, went without challenge by counsel for plaintiff in error. He seems to have tried the case rather on a theory than on the facts. Neither in his assignment of errors nor in argument here does he rest his cause on the proposition that there was no evidence to warrant the submission to the jury of the question of fact as to whether or not there was any such fraudulent conduct, within the meaning of the statute, connected with the execution and delivery of the deed of assignment. On the contrary, in the instruction which he himself asked, he requested the court to declare that the deed of assignment was valid on its face, and vested the legal title to the property in the assignee, "unless some fraud on the part of the assignor, prior to or contemporaneous with the execution of the deed, known to and participated in by the assignee, invalidated it." So when the court, in the second instruction given by it, followed the language employed in the refused instruction, with the exception of the words, "fraud, either express or implied," the counsel for interpleader is estopped from saying that the court erred in predicating an instruction on a state of facts unsupported by any evidence. He cannot assign as error that which he has invited the court to commit. "Consensus facit legem, communis error facit jus." Noble v. Blount, 77 Mo. 241; Holmes v. Braidwood, 82 Mo. 610; Fairbanks v. Long, 91 Mo. 633, 4 S. W. 499; Walton v. Railway Co., 12 U. S. App. 511, 513, 6 C. C. A. 223, and 56 Fed. 1006.

The essence of the contention made by counsel for plaintiff in error before this court is: First, that, inasmuch as he wrote into the deed of assignment the provision hereinbefore quoted, it negatived the existence of any contemporaneous understanding that the assignee was to do that which the assignor had declared, on the face of the deed, he should not do; and, second, that the employment of the phrase in the second instruction given by the court, "If, therefore, the assignment in question was free from fraud, either express or implied, at the time of its execution and delivery," was confusing, and afforded counsel for defendant in error an abused opportunity to mislead the jury by playing upon the words, "fraud, either express or implied," as these terms were unexplained by the court.

As to the first contention, it ought to be a sufficient answer to say that the provision inserted in the deed was nothing more in its legal

effect than what the statute by implication writes into every deed of assignment; and, so far from the supererogatory act imparting any virtue to the instrument, it was rather calculated to excite suspicion of its integrity. At all events, as its express incorporation into the deed imparted no more force and sanctity to the instrument than what the statute impressed upon it, it no more precluded proof aliunde of the existence of a secret understanding to the contrary than if it had been left out of the deed.

With respect to the second contention, it is to be observed that the only difference between the instruction requested by the plaintiff in error and that given by the court consists in this: In the instruction asked by plaintiff in error the phrase used was, "free from fraud," whereas, that employed by the court was, "free from fraud, either express or implied." What is the practical difference between "free from fraud" and "free from fraud, either express or implied"? Considered independent of the other instructions of the court, both instructions might be liable to the criticism that the jury should have been advised what constituted fraud as applied to the facts of the case. But evidently both counsel for plaintiff in error and the court, in framing these two instructions, are to be presumed to have had in mind the fraud on the statute, as defined in the first instruction given by the court. And so the jury must have understood it. As already shown, it was fraud under the provisions of the statute for the assignor to make such a deed, fair on its face, and for the assignee to accept it with the contemporaneous secret understanding between them that the assignee should at once proceed to do that, under color of the deed, which the statute prohibited. It was, therefore, technically unnecessary to have employed the term "fraud" in this instruction. It would have been the conclusion of fraud which the law affixes to the fact predicated in the first instruction given by the court.

The expression, "fraud, either express or implied," had reference clearly enough to the secret agreement between the assignor and assignee, which might have been expressed in words or implied by signs and suggestions. This is made manifest by the third instruction given by the court: "The court instructs you that fraud may be proven by circumstances, and, in determining what constitutes fraud, you have a right to consider all the evidence and circumstances in the case, and from that determine the question of fraud." Certainly it seems to us the plaintiff in error ought not to complain of the fact that the court added after the word "fraud" the words "express or implied," as the jury might have inferred therefrom that they were required to find some other evidence of fraud than that predicated in the first instruction given by the court.

The remaining assignment of error applies to the action of the trial court in permitting, over the objection of the plaintiff in error, the following questions and answers on the examination of the interpleader:

"Q. Who had the key to that store? A. I do not know. Q. The same time that Mr. Butler brought up the inventory and delivered it to you, did you get both the keys? A. That is my recollection."

Of course, without some independent proof of the existence of the secret understanding at the time of the making of the deed, the mere direction to the clerk to take an inventory, and the receipt of the key to the store, would have been immaterial. But immediately following up the delivery of the deed with acts of possession, taken in connection with other acts, conduct, and declarations preceding and simultaneous with the execution of the deed, were circumstances which, taken together, might justify the inference of the required secret understanding. And, furthermore, without such secret understanding having been followed up by an act evidencing possession, the defense against the claim of the interpleader would not have been made out. The evidence objected to was therefore competent. The judgments of the court of appeals and of the United States court for the Northern district in the Indian Territory are affirmed.