Edward C. KRIENKE, Plaintiff,

v.

ILLINOIS CENTRAL RAILROAD COM-
PANY, Defendant-Appellant,

and

Indiana Harbor Belt Railroad Company,
Defendant-Appellee.

No. 12014.

United States Court of Appeals
Seventh Circuit.

Dec. 2, 1957.

Rehearing Denied Jan. 7, 1958.

Lawrence Lawless, Herbert J. Deany, Robert S. Kirby, Wence F. Cerne, Chicago, Ill., for appellant, Joseph H. Wright, Chicago, Ill., of counsel.

Robert J. Rafferty, Martin J. Keating, Marvin A. Jersild, Chicago, Ill., for defendant-appellee.

Before LINDLEY, SCHNACKEN-BERG and PARKINSON, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

From a judgment in favor of plaintiff in an action for damages for personal injuries sustained by him while employed as a brakeman for defendant, Illinois Central Railroad Company,[1] it appeals. Indiana Harbor Belt Railroad Company, hereinafter sometimes referred to as "Belt," was also a defendant. The judgment was based upon a verdict of a jury which found Belt not guilty, and as to which plaintiff's motion for new trial is pending in the district court.

We shall state and discuss the errors relied upon by I.C.

Plaintiff's complaint, in charging I.C. with negligence proximately causing his injuries, based his action on the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51-60. In a separate count he charged Belt with common-law negligence arising out of the facts charged in his claim against I.C. Both defendants answered, denying negligence.

The first error argued by I.C. is that the district court should have directed a verdict for it, at the close of all the evidence, because plaintiff failed to sustain the burden of proving his charges of negligence. It states the following as a contested issue:

"Does the record contain any evidence which fairly and reasonably tends to support the charges of negligence submitted to the jury against this defendant?"

It answers this question in the negative.

At the close of all the evidence plaintiff reduced the charges of I.C.'s negligence in his complaint to the following:

"(A) It failed to use ordinary care to furnish the plaintiff with a reasonably safe place to work and to perform the duties of his employment;

"(C) It carelessly and negligently ordered and directed employees of the defendant Indiana Harbor Belt Railroad Company to drop cars against the cut of cars, which included the caboose in question, without ascertaining that no employees were in or about said caboose, or without giving notice or warning to plaintiff that such a drop would be made; * * *."

We now state those facts pertaining to those charges which the evidence tended to prove.

On December 18, 1953, plaintiff was employed by I.C. as a member of a switching crew, all of whom lived at Freeport, Illinois, and were away from their homes six days a week. They slept and ate in their caboose which went to I.C.'s Broadview yard six mornings a week. They stayed in the caboose at Hawthorne and on the date in question plaintiff prepared breakfast in the caboose there. They then went with the caboose and some cars to Broadview, about six miles west of Hawthorne, where they arrived at about 5 a. m. Plaintiff had been working on the Broadview switchers for years before December 18, 1953. The custom was to place the caboose on track 2 or 4 in the Broadview yard and to cook in the caboose. Practically every day Gardner, the clerk in the Broadview yard of I.C., came into the caboose for coffee between 7 and 10 a. m. This yard office was on the south side of I.C.'s main line just east of the 17th Avenue crossing.

---

1. Hereinafter referred to as "I.C."

Plaintiff testified "we got our orders from the clerk". The yardmaster Fundderburk was not in the Broadview yard December 18. He was at Hawthorne. When a foreign crew brought cars to the yard Gardner advised them on which tracks the cars were to be placed.

At the Broadview yard there are two main tracks and lying to the north of and paralleling them are four yard tracks, 1, 2, 3, and 4, numbered from south to north. Access to the yard tracks is by a track which leaves the westbound main track about opposite to where the latter passes in front of and to the north of the yard office and extends northeasterly and then easterly as track 4. From the access track switching connections are made with each of the tracks 1, 2 and 3.

Upon reaching Broadview yard on the day in question, the I.C. train was put on track 2. Plaintiff participated in switching work to the International Harvester plant until about 7:10 a. m. Upon returning from the Harvester switching, the crew put their train, consisting of two cars and a caboose, on track 4 with the caboose to the east and the two cars to the west. The crew then had a second breakfast, which plaintiff prepared. This was regular procedure. When at Broadview the caboose was always placed on either track 2 or track 4 at the west end near 17th Avenue, for the purpose of carrying coal, water, kerosene and groceries. After breakfast the engine was cut off to go to Hines, which was also regular procedure. I.C. conductor Dickinson directed plaintiff to stay in the caboose, which had been the practice for three or four years. Plaintiff started preparations for the noon meal and was thus engaged when the accident happened.

After the crew had gone to Hines, plaintiff saw Gardner and spoke to him while getting a supply of water in the yard office. Gardner regularly took plaintiff from the Broadview yard to the town of Broadview in his car to buy groceries for the caboose.

Belt regularly delivered cars to I.C. at Broadview, coming from the west. On December 18, Gardner reported for work at 7 a. m., then being the only clerk assigned. An operator and an agent were also assigned to that office, but the operator came an hour later, and there is no evidence that the agent was present. It was Gardner's duty to leave the office and check the yard to see which cars were on the tracks, and to then make a record thereof. Although Gardner reported for work at 7 a. m. on December 18, the first check he made of the yard was about 10 or 10:30 a. m.

On the morning in question the Belt dispatcher called the Broadview yard office and announced that an engine was pulling cars for delivery to Broadview. Foreman Scavo of the Belt train crew, when his train consisting of two cars stopped west of the 17th Avenue crossing, went to the I.C. yard office and asked Gardner what he wanted done. He had received instructions on yard movements before from Gardner. Gardner told Scavo to "drop" them on track 4. He did not tell him that there was a caboose in the yard. The Belt engine and cars were then visible from Gardner's desk. The Belt had previously made "drops" on track 4.

Gardner was a railroad man of 30 years experience who died before the trial and whose deposition was read. While Gardner testified that he did not know what a "drop" was, his supervisor, I.C. trainmaster McMahon, stated that he did know.

A "drop" switch is a movement where the engine is pulling the cars, the engine accelerates, then brakes, the cars are uncoupled, the engine moves away from the cars and over a switch, the switch is closed and the free-rolling cars are diverted onto a separate track. It is a standard railroad maneuver. A "drop" is also known as a "flying or running" switch. It is made only when other switching movements are impossible to make. "If done properly and with every precaution to know that there are no cars in the track and nobody in or on

the cars, it is a proper railroad maneuver."

Scavo saw cars on track 3 but did not see a caboose on track 4. He would not have made a "drop" on track 4 if he had known the caboose was there. Gardner saw distinctly that there was room for two cars, at best, three cars, on track 4 before he told him to place cars there. Gardner knew that it was customary procedure for the caboose to be left at Broadview when the engine and crew went to Hines Hospital for switching. The presence of a caboose is enough to warn of possible occupancy.

On Scavo's order, the Belt engine pulled the cars while in motion and a brakeman uncoupled them from the engine. The engine was accelerated and directed into one track while the cars continued on to track 4 and struck the cut of two cars with the attached caboose with such force as to throw plaintiff about the interior of the caboose and caused the cars to move and strike other cars located to the east on track 4, a distance of 240 to 300 feet away.

■ 1. Under the Federal Employers' Liability Act we must apply to the foregoing facts this test:

Do they justify with reason the conclusion that I.C. negligence played any part, even the slightest, in producing the injury or death for which damages are sought?

We answer this question in the affirmative.

See Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493. The court added:

"* * * Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows a jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or in part' to its negligence."

■ From our appraisal of the foregoing facts we determine that a jury question was presented on the plaintiff's charges of I.C. negligence.

2. I.C. contends the district court committed error when Dickinson, its conductor, called as a court's witness upon a subpoena issued by Belt, was asked by Belt's attorney the following question: "Were you disciplined in any way as a result of this incident by the Illinois Central?" The witness answered, "Yes."

■ No objection to the question was made and, for that reason the charge of error cannot be considered by us. Federal Rules of Civil Procedure, 28 U.S. C.A. rule 46. Fort Worth and Denver R. Co. v. Harris, 5 Cir., 230 F.2d 680, 682; Fort Worth and Denver R. Co. v. Janski, 5 Cir., 223 F.2d 704, at page 708. To the same effect is 4 C.J.S. Appeal and Error § 244, p. 760.

■ 3. We are intrigued by an interlude in the trial below which is called to our attention by the argument of I.C. that the court erred in its ruling, and in its comment, with respect to a large-sized photograph (I.C. exhibit 10), which was also marked Belt's exhibit 1. Counsel for I.C. cross-examined Belt's witness Hoalt regarding the use of the tracks shown in the exhibit. On redirect examination, the following occurred:

"By Mr. Hoffman (counsel for Belt):

"Q. Emil, does this picture present anything that you can figure out that has any bearing on this lawsuit?

"Mr. Lawless (counsel for I.C.): I object to that. That is an improper remark.

"Mr. Hoffman: I am curious, counsel—

"The Court: Wait a minute. That is not a proper remark. Ask him what it has to do with the lawsuit and have him tell what he knows.

"Mr. Lawless: I renew my objection.

"The Court: Objection overruled. We are having a picture in here; they are entitled to know what it has to do with the lawsuit.

By Mr. Hoffman:

"Q. Can you tell me whether anything on this picture has anything to do with this lawsuit or this accident? A. No, sir. That is half a mile or so away from where it happened."

In this court I.C. contends that the court permitted the witness to state "a rank conclusion regarding an ultimate fact, unsupported even by the refinement of a hypothetical question to apprise the witness fully of the intricacies of the lawsuit, and also without qualifying Hoalt as an expert on the question." I.C. also points out that, in the presence of the jury, Belt's attorney referred to the exhibit as a "mystery picture."

It was offered and received in evidence as a Belt exhibit, but, for some reason not explained here, it was not offered in evidence by I.C.

We agree with plaintiff's counsel, who seems not to have been engaged in this tripartite activity involving the two railway counsel and the district court, that it is obvious that the picture had nothing to do with the issues before the jury and that I.C. was in no way harmed by the expression of opinion by the witness. Even if error was committed, no one was prejudiced. The humor was harmless.

■ 4. I.C. contends that the district court erred in denying it an opportunity to make a rebuttal argument after Belt's counsel completed his argument to the jury. The trial court had designated this order of closing arguments: (1) plaintiff's opening argument, (2) I.C. argument, (3) Belt's argument, and (4) plaintiff's closing argument. I.C. does not point out to us where it objected to this arrangement. Instead, we find from the record, that, after Belt's final argument, counsel were with the court in chambers and the following occurred:

"I.C. attorney:

"Q. Do I have the right to rebuttal based on what Mr. Hoffman said?

"The Court: No, I don't think so.

"I.C. attorney: All right."

This pacific reply of I.C. counsel is like the famous retort "Very well, your Honor", in Fort Worth and Denver City R. Co. v. Roach, 5 Cir., 219 F.2d 351, 352, where it was held that counsel did not thereby make a proper objection to a ruling so as to preserve it as a basis for assignment of error on appeal.

5. Defendant contends it was prejudiced by the court's erroneously giving the following instruction:

"You are instructed that if you find for the plaintiff you will be required to determine the amount of his damages. In determining the plaintiff's damages, if any, you should determine the amount of damages suffered by him directly and proximately in consequence of such injuries, if any, and you should find the amount of damages to be such a sum of money as will fully, fairly, justly and adequately compensate him for such injuries. In determining the amount of such damages, if any, it is your duty to take into consideration his age, earning capacity, and the character, extent and severity of such injuries, if any, the pain and suffering, if any, that he has endured up to the present time, and the pain and suffering, if any, that it is reasonably certain he will endure in the future; you will take into consideration such disability, if any, as he has suffered up to the present time and such disability, if any, as it is reasonably certain he will suffer, in the future therefrom;

you should take into account and consideration the extent, if any, to which he has been incapacitated to work and earn money in consequence of such injuries, provided that you find from the preponderance of the evidence that he has been incapacitated to work and earn money, and the amount of earnings, if any, which plaintiff has lost from the time he was injured up to the present time directly and proximately in consequence of his injuries, if any, and the amount of earnings, if any, it is reasonably certain from the preponderance of the evidence he will lose in the future directly or proximately in consequence of said injuries, if any, so far as the above elements, if any, have been proved by a preponderance of the evidence to have resulted from the accident in question; and thereby the jury will determine from the evidence what sum will be a fair and just compensation for such injuries, if any, if they find a verdict for the plaintiff; you are further instructed that the portion of your award, if any, for loss of future earnings must be reduced to its present cash value and adequate allowance must be made for the earning power of money.

"If you find that the plaintiff has proved by a preponderance of evidence that loss of future earnings is reasonably certain to be sustained by plaintiff as a proximate result of the injuries in question, you must in assessing damages for such future losses, if any, take into consideration the— *this is the same thing. I don't know how I got it in there, but I will read the rest of it.[2]*—(We have supplied the italics.) you must in assessing damages for such future losses, if any, take into consideration the earning power of money and allow no more than the present value of such future losses, if any, calculated as bearing interest

at the highest net rate that can be had on money safely invested. Any amount of damages for the future losses must be discounted to make them equivalent to their present value."

That part of the instruction in bold face type was tendered by I.C. The preceding part was tendered by plaintiff.

I.C. now contends that

"This instruction allowed, and in fact invited, the jury to consider future loss of earnings as an element of damages in spite of the fact that the record is barren of evidence substantiating and delineating such a loss."

■ We do not believe that I.C. is in a position to complain about this instruction. Its own instruction dealt with future loss of earnings as an element to be taken into consideration in assessing plaintiff's damages.

A party cannot complain of an alleged error in instructions when the same error is found in its own instructions. Little Rock & M. R. Co. v. Moseley, 8 Cir., 56 F. 1009, 1010; Badgett v. Johnson-Fife Hat Co., 8 Cir., 85 F. 408, 411; Spring Creek Drain. Dist. v. Greenawalt, 335 Ill. 147, 148, 166 N.E. 497.

■ 6. I.C. contends that Belt's instruction 2, as modified by the court, was erroneous and prejudicial to its rights. It read:

"In the absence of notice, actual or constructive, to the crew of the Indiana Harbor Belt Railroad Company that the plaintiff was in such position of peril as to be liable to suffer harm by the movement of their cars, then they were not guilty of negligence in running their cars in the usual manner in which freight cars were operated in Broadview Yard, if said cars were in fact being operated in such usual manner."

We have considered this instruction in connection with all other instructions.

2. We assume this is what the district judge interpolated.

given. We find it is not subject to the criticism made by I.C.

 7. The court refused to give the following instructions tendered by I.C.

"R. The jury is instructed that whatever negligence, if any, you may find on the part of the defendant, Indiana Harbor Belt Railroad, is not to be charged to the defendant, Illinois Central Railroad Company.

"S. The persons in charge of plaintiff were not required to anticipate or guard against any conduct on the part of others which was not reasonably to be expected; and the law does not require such persons to regulate their conduct with reference to any conduct on the part of others not reasonably to be expected and not anticipated by them under the circumstances in evidence in the case."

As to instruction R, we do not find that it is applicable to any issue in the case. No contention appears to have been made in arguments before the jury or elsewhere that negligence on the part of Belt could be charged to I.C.

As to instruction S, it is vague and uncertain. For instance, it refers to persons in charge of plaintiff. Just whom the jury would understand were meant by this phrase is conjectural. In addition, the instruction in referring to conduct on the part of others which was not reasonably to be expected and not anticipated by them under the circumstances in evidence in the case, might reasonably be construed by the jury to mean that the court considered that there was such conduct on the part of others. The instruction did not leave to the jury its prerogative of deciding from the evidence whether there was any such conduct. It would have been unfair to give this instruction.

 8. The *ad damnum* clause in plaintiff's complaint was $35,000. When all parties had rested at the trial, plaintiff's counsel moved the court to increase the *ad damnum* to $100,000. The motion was denied. During his final argument, plaintiff's counsel asked the jury to return a verdict for $75,000, to which the I.C. attorney objected, but was overruled. Counsel for I.C. said he thought that this statement was so prejudicial "as to require a juror to be withdrawn."

I.C. argues in this court that the conduct of plaintiff's attorney was a disregard of the court's ruling and operated to defeat I.C.'s right to a diminishment of damages. The trial court directed, and the plaintiff did enter, a remittitur of $5,000. We are unable to see why under these circumstances I.C. is entitled to a new trial, as urged here.

For the reasons hereinabove set forth, the judgment of the district court is affirmed.

Affirmed.