BROWN SHOE COMPANY *v.* STONE.

Opinion delivered February 28, 1927.

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—RELEASE.—In an action by a creditor to recover a balance of the account after the debtor had made an assignment for the benefit of creditors, a verdict for defendant *held* sustained by evidence that plaintiff had accepted a *pro rata* dividend in full settlement.

2. CUSTOMS AND USAGES—WHEN BINDING.—A local custom by which creditors, after assignment of a debtor for their benefit, took a *pro rata* share of the assets in satisfaction of their claims, of which custom plaintiff had knowledge, *held* sufficiently proved.

3. APPEAL AND ERROR—INVITED ERROR.—Appellant cannot complain of the introduction of testimony as to a custom brought out by appellee, when appellant brought out testimony as to such custom more fully than appellee did.

4. ASSIGNMENT FOR BENEFIT OF CREDITORS—RELEASE.—Where a creditor, knowing that an assignment will not be carried through unless it agrees to it, and with that knowledge accepts a check sent in full payment, it will be bound by its own act, and cannot thereafter maintain a suit for any balance against the assignor.

Appeal from Sebastian Circuit Court, Fort Smith District; *John E. Tatum,* Judge; affirmed.

*Clinton R. Barry,* for appellant.

*Warner, Hardin & Warner,* for appellee.

MEHAFFY, J.  R. E. Williams and J. H. Stone were in business in Fort Smith, Arkansas, and on the eighth day of March, 1924, made a deed of assigment to H. C. Bass, reciting that the parties of the first part were indebted in divers sums of money, which they were unable to pay in full to their different creditors, a list of which was given; and the deed further stated that they decided to make a fair distribution of their property and assets among all their creditors, in proportion to their respective claims. The said deed recited that it was in trust for the benefit of creditors of the estate of the parties of the first part. Among the creditors in the list attached was the Brown Shoe Company in St. Louis, to whom, according to the list, Williams & Stone were indebted in the sum of $1,004.87.

H. C. Bass took charge of the assets of Williams & Stone, and wrote the creditors, on the 24th day of March, 1924, the following letter, which was mailed to the Brown Shoe Company, as well as to the other creditors:

"March 13, 1924.

"To the Creditors of
Williams & Stone,
Fort Smith, Arkansas.

"Gentlemen: Subsequent to a meeting of creditors, held in this city last Friday, March 7, Williams & Stone, located at 420 Towson Avenue, Fort Smith, Arkansas, have made an assignment to the writer for the benefit of all creditors, share and share alike, subject, of course, to the approval of said creditors.

"The following firms were represented at the creditors' meeting: Beal-Burrow Dry Goods Company, Berry Dry Goods Company, J. Foster & Company, Arkansas Valley Bank. It developed that the liabilities of Williams & Stone were considerably in excess of the cash value of their assets and that their volume of business was not sufficient to cover overhead expenses, therefore it was the unanimous opinion of the creditors present that it would be to the best interest of all parties concerned to liquidate this business, and the writer was asked to act as trustee to avoid bankruptcy proceedings.

"The books of this concern showed their liabilities and creditors to be as follows:

| | | |
|---|---|---:|
| Beal-Burrow D. G. Co. | Little Rock, Ark. | $2,733.34 |
| Brown Shoe Co. | St. Louis, Mo. | 1,004.87 |
| Berry D. G. Co. | Ft. Smith, Ark. | 652.42 |
| J. Foster & Co. | Ft. Smith, Ark. | 1,941.23 |
| Arkansas Valley Bank | Ft. Smith, Ark. | 2,000.00 |
| Ft. Smith Garment Co. | Ft. Smith, Ark. | 125.50 |
| Wolverine Shoe Co. | Rockford, Mich. | 306.50 |
| The Davis Hat Co. | Dallas, Texas | 121.30 |
| Safe Cabinet Co. | Marietta, Ohio | 22.10 |
| Sunbraid Hat Co. | St. Louis, Mo. | 23.30 |
| One month's rent | | 50.00 |

"Total     $8,980.86

"Inventory shows the following assets:

| | |
|---|---:|
| Cash | $ 46.80 |
| Dry goods and notions | 3,190.69 |
| Shoes | 2,759.10 |
| Groceries | 480.53 |
| Fixtures | 902.11 |

"Total     $7,379.23

"Acting on the assumption that all creditors not represented at the meeting will concur in the assignment, it will be the purpose of the trustee to sell the stock of merchandise and fixtures at public auction at 10 A. M. Monday, March 24, at the Williams & Stone store.

"It will be noticed that this concern has no notes and accounts receivable, having done a strictly cash business, and the condition of their affairs is due to the fact that very little capital was put into this business; to be exact, only $1,170; however, at the time the indebtedness was incurred it was the belief and opinion of Williams & Stone that they would be able to secure sufficient outside capital to conduct their business, but their plans did not carry through, and, since their volume of business has not taken care of their overhead, the small initial investment has been consumed.

"Hoping that you will concur in the assignment and forward verified statement of your account by return mail, I am,

"Yours very truly,
"H. C. Bass, Trustee."

After the Brown Shoe Company received the letter they sent to Bass, the trustee, their account, amounting to $1,004.87. Thereafter, on the 24th day of April, 1924, H. C. Bass wrote to the Brown Shoe Company, inclosing a check to them for $482.34, in which he stated that this amount represented the first and final dividend of 48 per cent. of their account against Williams & Stone. This statement was then followed in the letter by a complete statement of the receipts and disbursements. On the 13th day of September, 1924, the Brown Shoe Company filed suit against Williams & Stone for $522.49. No service was had on Williams and the suit proceeded against Stone. Defendant Stone filed an answer denying the indebtedness, and denying that the account matured prior to April 8, 1924, denying their statement of account was correct, and denying that Williams admitted it to be true; and, for further answer, Stone alleged that a meeting of all the creditors of the concern was called and held, and that at said meeting the partners proposed to deliver over all the assets in liquidation and settlement of the outstanding debts, including the plaintiff's. They alleged that the proposition was accepted by the creditors and the agreement fully consummated, and all other assets

of the business were turned over to the trustee, who was selected by the creditors, and that the creditors accepted the amount in full, final, and complete settlement of all the obligations, including the debt of plaintiff. They alleged that plaintiff was a party to the agreement entered into, acquiesced in and accepted the agreement and settlement thereunder, and that their creditors were paid, each, including the plaintiff, its pro rata part.

The letter from the trustee to the appellant stated that Williams & Stone had made an assignment to the writer for the benefit of all the creditors, share and share alike, subject, of course, to the approval of all creditors. The appellant then had notice that there was an assignment for the benefit of all creditors, but it was subject to the approval of all creditors. Then the letter, inclosing the appellant a check for $482.34, stated that it represented the first and final dividend. The letter of March 13, 1924, above referred to, also stated that the liabilities of Williams & Stone were considerably in excess of their cash assets, and that it was the opinion of the creditors that it would be to the interest of all parties concerned to liquidate their business, and the writer was asked to act as trustee to avoid bankruptcy proceedings. This letter also contained the following statement: "Acting on the assumption that all creditors not represented at the meeting will concur in the assignment, it will be the purpose of the trustee to sell the stock of merchandise and fixtures at public auction at 10 A. M. Monday, March 24, at the Williams & Stone store." The letter closed with the statement: "Hoping that you will concur in the assignment and forward verified statement of your account by return mail, I am," etc.

The appellant therefore knew that an assignment for the benefit of all creditors was made, was subject to the approval of all creditors, and knew when the stock was to be sold, and knew that, if it approved it, it was requested to send its verified statement of account by return mail.

The trustee who wrote those letters testified that he had received the account of the Brown Shoe Company through the mail.   This witness further testified that the creditors represented felt that it was the best thing that could be done for the creditors to save expense and to save bankruptcy cost.   Witness also testified that, when he wrote the letter to the Brown Shoe Company, appellant, he received a verified statement of account; in other words, it filed its claim with him.

The testimony shows that, when creditors took charge of a debtor's property, it was the custom in that territory that the pro-rata share of the property received by each creditor should be in satisfaction of the creditor's claim, and that this was the understanding in this case. The testimony also shows that the appellant, Brown Shoe Company, had been doing business in that trade territory for many years.   It was advised by the trustee that an assignment had been made for the benefit of all the creditors, but that it was on condition that it met the approval of all the creditors, and it was expressly stated to the appellant in the letter that the creditors had done this to avoid bankruptcy, that is, this is the substance of what was stated in the letter, and, after being told that the debtors had assigned all their property for the benefit of all the creditors, but it was on condition of the approval of all the creditors, they sent their verified account as requested, and participated in the proceeds of the sale.

The proof is sufficient to show not only the custom, but that the appellant knew of the custom, having been in that territory for many years. Appellant argues but two questions.   It first contends that the court erred in admitting certain testimony, and it is argued that the testimony with reference to the agreement of the creditors, and the testimony as to the custom, was improper. The appellant, however, brought out the testimony about the custom much more fully than the appellee, and also showed that the Brown Shoe Company had been doing business in that territory for many years,

In the view that we take of this case we do not think that the testimony was prejudicial. The appellant contends that the court erred in refusing to direct the jury to find for the plaintiff. It may be conceded that, if a debtor makes an assignment for the benefit of his creditors, with a provision in the deed that creditors must agree to accept their *pro rata* share in full settlement of their claim, the deed of assignment is void, and, if this condition was not in the deed, but was made at the time and carried into effect, it would be void. The Circuit Court of Appeals of the 8th Circuit announced the rule to be as follows: "And a deliberate agreement, in or out of the deed, made at the time and carried into effect, to violate the statute, is a fraud upon the statute, and a fraud upon the legal rights of creditors, which the law will redress by removing the fraudulent barrier to the assertion of their legal rights against their debtors." *Simmons Hardware Co.* v. *Rhodes*, 7 Fed. Rep. (2d) 352.

Another case decided by this court and relied on by appellant stated:

"A deed of assignment, by an insolvent debtor, which provides that the preferred creditors are not to enjoy its benefits unless they accept of its provisions in full satisfaction of their debts, and that, if any of them refuse to accept, they shall be excluded, and the *pro rata* share to which they would have been entitled, had they accepted, shall be paid to another specified creditor, and which makes no provision as to the disposition of any surplus that may remain in the event all the preferred creditors shall refuse to accept, after paying the debt of the residuary creditor, is fraudulent and void on its face." *Collier* v. *Davis*, 47 Ark. 367, 1 S. W. 684, 58 Am. Rep. 758.

The court puts this on the ground that the debtor has no right to do this because it hinders and delays the creditors in their remedies and endangers the ultimate collection of their debts. It is said that it puts the proposition beyond the reach of judgments and executions into the hands of an assignee chosen, not by themselves,

but by the debtor.   This court said, in one of the cases relied on by appellant, after announcing the rule above set forth: ''This,'' say the authors of Ruling Case Law, ''is on the ground that an insolvent debtor has no right to dictate terms which shall make him independent of his legal obligations, and that it is contrary to justice and against public policy to allow debtors to coerce their creditors into releasing their debts.'' *Nelson* v. *Harper*, 122 Ark. 39, 182 S. W. 519.

The rule is well established in this State that a debtor cannot make an assignment with the condition that all persons who accept their *pro rata* part shall thereby extinguish their debt, but we have here a very different case from any of those relied on by appellant.   The debtor in this case did not seek to coerce any of his creditors. It was the creditors themselves who met and agreed to take charge of all of the debtor's assets; the debtor had no voice in it, as it appears from the evidence; he simply executed the deed to the trustee selected by the creditors, with the provision agreed to by the creditors. They entered into this agreement, they say, to avoid bankruptcy, and, in notifying the creditors, the trustee expressly stated that there had been a meeting of creditors held, and, subsequent to that meeting, the deed of assignment had been made to the trustee for the benefit of all the creditors, share and share alike, and subject, of course, to their approval. He also stated in the letter that he was asked to act as trustee to avoid bankruptcy proceedings. He was representing the creditors, and not the debtor.   This letter was received by the appellant, and, in response to that letter, it sent its verified account. Since the appellant knew that a deed of assignment was made for the benefit of all the creditors, knew that it was done at a meeting of the creditors for the purpose of avoiding bankruptcy, and knew that it was not to be carried out unless all the creditors agreed, it agreed to the arrangement by sending its verified account as requested, with the knowledge of all these facts.

It is well established in this State that, where a creditor accepts a check which states on its face that it is in full payment, the creditor is bound thereby, and cannot thereafter sue for any balance. And if a creditor, knowing the facts, knowing that the assignment will not be carried through unless it agrees to it, knows that the check is sent in full satisfaction of its account, and receives and cashes the check with the knowledge of all the facts that were in the possession of appellant in this case, it is bound by its own act, and cannot thereafter maintain suit for any balance. At any rate, the court could not say as a matter of law that it was not bound, and this is the only contention in this case.

It has been said by this court, speaking of deeds of assignment: "Such deeds of assignment have been upheld by the decisions of this court holding that the debtor, in making assignment of his property for the benefit of creditors, may exact releases from creditors as a condition of preference under the deed, where he dedicates all of his property, not exempt by law, to the payment of all his creditors, not necessarily to the payment of all in equal proportions." *King* v. *Hargadine-M'Kittrick Dry Goods Co.*, 60 Ark. 1, 28 S. W. 514.

Again this court has said: "An insolvent debtor can reserve no use or benefit to himself out of the property assigned. He may stipulate for a release, but he must dedicate all of his property, not exempt by law, to the payment of all his creditors; not necessarily to the payment of all in equal proportions, for he may prefer such as will execute releases. But the deed must provide for the distribution of any surplus that may remain in the hands of the trustee, after the payment of the preference creditors, amongst the other creditors, whether they assent or not." *McReynolds* v. *Dedman*, 47 Ark. 13, 1 S. W. 552.

No objection is urged to any instructions given by the court and no objections to the court's refusing to give instructions, except the one instruction for a directed verdict. The evidence is sufficient to support the verdict, and the judgment is therefore affirmed.