BROWN-HINTON WHOLESALE GROCERY COMPANY *v.*
WARE & SON.

Opinion delivered October 8, 1928.

*W. L. Curtis,* for appellant.

SMITH, J. Appellant, a corporation, brought suit against appellees, a copartnership doing a general mercantile business, to recover a balance alleged to be due upon an account for goods, wares and merchandise sold appellees by appellant.

Appellees answered, and alleged that there had been a composition and settlement of the demand whereby they had been discharged from individual liability for the debts of the copartnership. In support of this plea the following testimony was offered.

C. A. Goodwin testified that he was a vice president of a corporation which was one of appellees' largest creditors, and that in February, 1927, he called a meeting of appellees' creditors "to save the creditors any loss." A letter was written to appellant company advising the time and place of this meeting, which was duly held and attended by creditors representing eighty per cent. of the indebtedness due by appellees. At this meeting it

was determined that appellees should execute an assignment of all of their assets, including the accounts due them; that a trustee should take charge of the business and continue it until fall, and collect the accounts, and, until that time, should have the right to purchase such goods as were necessary to continue the business. This assignment was duly executed, and Goodwin was made trustee, and a committee of the creditors was named to advise the trustee in the discharge of his trusteeship.

After this meeting of the creditors and the execution of the assignment, the trustee mailed to appellant and all other creditors the following letter:

"At a creditors' meeting, held in the office of the Williams-Echols Dry Goods Company, March 7, 1927, at which thirty-five creditors were represented, totaling about 80 per cent. of the indebtedness, as shown by their statement, it was decided that the best interest of the creditors would be to appoint a creditors' committee of three, one of which was to act as trustee, to liquidate the above estate, under the direction of the other two members of the creditors' committee, who will advise the trustee the wishes of the creditors. It was also decided to liquidate the estate gradually, as the assets would bring very little at this time if placed on the market at forced sale, as a large part of the assets consist of notes and accounts receivable; that Mr. M. N. Ware, who is manager, thinks a large part can be collected this fall.

"We sent a man today to take a complete inventory of the merchandise, notes, accounts, etc., and as soon as same can be made, we will advise you further. Would like to have a letter from you stating that you will cooperate with the other creditors in making this effort to reach an adjustment of the affairs of G. L. Ware & Son, also send us verified itemized statement of your account."

Appellant sent to the trustee a verified itemized statement of its account. The trustee proceeded to discharge his trust, and, in doing so, bought certain goods from appellant, for which the trustee paid appellant, but it was found that the operating expenses and overhead

costs were so large that the continuation of the trustee-ship was not advisable.

Goodwin further testified that, while he was acting as trustee, Mr. Brown, the president of the appellant company, talked with witness about the trusteeship. In the course of this conversation witness told Brown that any bill for goods thereafter bought for the defendant firm would have to be o. k.'d by the trustee. Brown expressed to witness his regret that he did not attend or have a representative present at the creditors' meeting; that he had intended doing so, but had overlooked it.

The trustee determined, upon the advice of his advisers, to sell the assets of the defendant copartnership, and this was done, and from the proceeds of this sale a sum was derived sufficient to pay creditors a dividend of twenty-seven per cent. A check for that amount was sent the appellant company, and returned by it, after which this suit was brought.

The trustee and certain other witnesses testified that there was a custom in the trade vicinity of Fort Smith whereby, when the creditors of an embarrassed debtor took over the assets of the debtor and wound up his business, all creditors participating or agreeing to participate in the equal distribution of the proceeds derived from the receivership were thereafter concluded from prosecuting any proceeding to enforce payment of the unpaid portion of their demand.

Mr. Brown, in rebuttal, testified that he learned that a creditors' meeting would be held, and discussed it with Mr. Ware, of the defendant firm, but that he had never heard of the trusteeship, and that Goodwin told witness he was going to run the business of the debtor firm and would pay its liabilities, and that witness knew of no custom whereby the creditors might take over the assets of a debtor and thereby extinguish their debts after receiving a *pro rata* share of the proceeds of the sale of the debtor's assets, in the absence of an agreement to that effect upon the part of all the creditors, and that his company had not so agreed.

The validity of appellant's demand is not questioned, and it is insisted only that, by participation in the trusteeship, appellant is estopped from demanding anything more than its *pro rata* share of the funds derived from the trusteeship. The question for decision is therefore whether appellant is estopped by its conduct from prosecuting this suit.

The instant case is somewhat similar to that of *Brown Shoe Co.* v. *Stone,* 172 Ark. 1156, 292 S. W. 117. That case arose in the Fort Smith trade territory, as did the instant case, and testimony similar to that in the instant case in regard to the custom of creditors taking over the assets of their debtor was offered.

Such custom, if it exists, can have no binding effect except upon persons who contract with reference to it, as it is in contravention of what would otherwise be the law in this State, as is pointed out in the opinion in the Brown Shoe Company case, *supra.*

The case of *Simmons Hardware Co.* v. *Rhodes,* 7 Fed. Rep. 352, cited in the Brown Shoe Company case, arose in this State, and after a review of the cases in this State which are cited, it was there said:

"An examination of the decisions from the Supreme Court of the State of Arkansas discloses it to be the settled rule of decision in that State that a conditional stipulation in a general assignment for the benefit of creditors, if accepted, shall extinguish and satisfy all liability of the maker of the assignment to creditors, renders such an assignment invalid, because the same tends to hinder, delay, and defraud creditors in the collection of their just debts." (Citing numerous Arkansas cases).

In the Brown Shoe Company case the opinion recites that the testimony showed or that the jury might have found that the particular custom referred to existed; that the parties were aware of it, and contracted with reference to it, and that, after the discharge of the trust by the trustee, the creditor received from the trustee a check which stated on its face that it was in full pay-

ment of the debt due the creditor. Under these facts the court held that the testimony supported a verdict in favor of the debtor.

In the instant case the court, over appellant's objection, charged the jury as follows:

"1. You are instructed that, if the defendants made an assignment for the benefit of their creditors and turned over their property to a trustee for an advisory committee of such creditors for the purpose of extinguishing their debt and to avoid bankruptcy, and that the plaintiff did participate in the assignment by filing its claim with the trustee and by dealing with the trustee, you will find for the defendants."

This instruction is not warranted by the opinion in the Brown Shoe Company case *supra*.

It will be observed that this instruction does not require the jury to find that there was a trade custom, or that appellant was aware of it and had contracted with reference to it.

So far as appellant is concerned, the instruction required only that it "did participate in the assignment by filing its claim with the trustee and by dealing with the trustee" for its debt to be extinguished. Appellant dealt with the trustee after the assignment by selling him goods, and filed its claim with the trustee, but the president of the appellant company testified that this was done without his knowing that he would be expected, in accordance with the alleged local custom, to cancel such portion of his debt as the trustee did not pay.

The instruction is therefore erroneous. Appellant would not be bound by merely filing its claim with the trustee, unless in so doing it thereby assented to accept its *pro rata* share of the proceeds of the trusteeship in full settlement of its claim, and the proof of the custom was competent as tending to show whether, in conforming thereto, appellant had agreed to cancel such portion of its debt as the receiver did not pay.

We do not discuss the conditions under which a local custom, which is not mentioned by the contracting parties,

becomes a part of the contract, on the presumption that the parties contracted with reference to it, as we must assume that, on the retrial, when this question is submitted to the jury, it will be under correct instructions. *Exchange National Bank* v. *Little,* 111 Ark. 263, 164 S. W. 731.

For the error in giving the instruction set out above the judgment must be reversed, and it is so ordered.