### BEAL BURROW DRY GOODS CO. v. BAKER.

No. 18646.  Opinion Filed April 16, 1929.

Rehearing Denied May 21, 1929.

W. J. Horton and Jackman A. Gill, for plaintiff in error.

Counts & Counts, for defendant in error.

DIFFENDAFFER, C. This is an action brought by Beal Burrow Dry Goods Company, plaintiff in error, herein referred to as plaintiff, against J. H. Baker, defendant in error, herein referred to as defendant, for the recovery of $1,097.08, claimed as a balance due upon a promissory note. The note was for the sum of $2,000. It was executed by Williams & Stone, a copartnership composed of R. E. Williams and J. H. Stone, who were engaged in business in Ft. Smith, Ark., and indorsed by J. H. Baker. The petition was in the usual form as to execution and indorsement of the note. Defendant answered admitting the execution and delivery of the note by Wiliams & Stone, and further alleged:

"Third. Defendant admits that he indorsed said promissory note by writing his name across the back thereof, and that such indorsement was without consideration, but as a mere matter of accommodation.

"Fourth. For further answer, defendant alleges that on or about the date said note shows a credit of $986.03, the plaintiff and Williams & Stone, the original makers of said note, made and entered into an agreement by which the said Williams & Stone delivered to plaintiff and other creditors, certain goods, property and money, the exact description and amount thereof being unknown to this defendant, with the agreement and understanding that the plaintiff would accept said property, money and goods in full and complete settlement and satisfaction of said promissory note, and that the said Williams & Stone were to be released from further liability by reason of the execution and delivery of said promissory note, and that the said plaintiff received and accepted said property, goods and money in full settlement of said obligations, and fully released the said Williams & Stone from further liability on said note.

"Fifth. This defendant alleges that the said Williams & Stone were released from said liability on said note without his knowledge or consent, and that by reason thereof, and in consideration of said agreement, defendant is fully released and discharged from all liability as indorser on said promissory note."

Plaintiff moved to strike certain parts of the answer as follows:

"(1) All of paragraph three for the reason that same is redundant and immaterial and constitutes no defense whatsoever.

"(2) All of the fourth paragraph for the reason that the same is redundant and immaterial and constitutes no defense whatsoever.

"(3) All of the fifth paragraph for the reason that the same is redundant and immaterial and constitutes no defense whatsoever."

The motion was overruled and plaintiff replied by general denial, and further alleged:

"Plaintiff says that the assignment made to creditors by Williams & Stone was executed in Ft. Smith, Ark., and that at that time both members of said firm were domiciled and the said business was located in Ft. Smith, Ark.

"Plaintiff further says that the said assignment to creditors and all transactions connected therewith were governed by the laws and decisions of Arkansas, which laws plaintiff expressly pleads as hereinafter.

"Plaintiff further says that under the laws and decisions of Arkansas an assignment, either in writing or otherwise, such as pleaded by defendant, is void and contrary to public policy, and plaintiff therefore says that said agreement claimed by defendant is void and constitutes no defense."

The issues as thus joined were tried to a jury, resulting in a verdict for defendant, upon which verdict, after unsuccessful motion for new trial, judgment was entered. From this judgment, plaintiff appeals. There are ten assignments of error, but the principal question involved is raised in the seventh assignment, viz: That the court erred in refusing to direct a verdict for plaintiff.

Williams & Stone were in business at Ft. Smith, Ark., and from the record it appears that,, on or about the 8th day of March,, 1924, they were indebted to various creditors, including plaintiff, in the aggregate sum of nearly $9,000. Their assets were about $7.379.23. On said date a meeting of the principal creditors, except Brown Shoe Company. was held at the Arkansas Valley Bank in Ft. Smith. It is not clear how the meeting was brought about, but the representative of plaintiff notified defendant. At this meeting the condition of the firm was

discussed. One of the members was there, and it was agreed that the firm would be unable to continue in business at that place, for the reason that the volume of business was so small that the overhead expenses could not be paid. One of the members desired to move the stock to another town, but objection was raised to this. There was evidence to the effect that at this meeting a tentative agreement, subject to the approval of the other creditors, was made, whereby Williams & Stone were to make an assignment for the benefit of creditors, and, if possible, prevent bankruptcy; and that it was agreed by those present that if the assignment was made, they would accept the proceeds in full settlement of their accounts.

H. C. Bass, a representative of one of the principal creditors, was agreed upon by the creditors, as assignee, and thereafter, Williams and Stone made a deed of assignment to H. C. Bass reciting that the parties of the first part were indebted in diverse sums of money, which they were unable to pay in full to their different creditors, a list of which was attached; the deed further stated that they desired to make a fair distribution of their property and assets, among all their creditors in proportion to their respective claims.

The deed recited that it was in trust for the benefit of creditors of the estate of parties of the first part. Nothing whatever was said in the deed about creditors accepting dividend in full settlement of their claims or accounts or releasing Williams & Stone. Bass took charge of the property, and March 13th wrote all creditors, including plaintiff, in part:

"To the Creditors of Williams & Stone, Fort Smith, Arkansas.

"Gentlemen: Subsequent to a meeting of the creditors, held in this city last Friday, March 7th, Williams & Stone, located at 420 Towson avenue, Fort Smith, Ark., have made an assignment to the writer for the benefit of all creditors, share and share alike, subject, of course, to the approval of said creditors. The following firms were represented at the creditor's meeting: Beal Burrow Dry Goods Company, Berry Dry Goods Company, J. Foster & Company, Arkansas Valley Bank.

"It developed that the liabilities of Williams & Stone were considerably in excess of the cash value of their assets, and that their volume of business was not sufficient to cover overhead expenses; therefore, it was the unanimous opinion of all creditors present that it would be to the best interest of all parties concerned to liquidate this bus-

iness, and the writer was asked to act as trustee to avoid bankruptcy proceedings.

The assignee advertised and sold the property and distributed the proceeds among all the creditors at the rate of 48 per cent. of their claims.

Williams & Stone were indebted to plaintiff, in addition to the $2,000 note, in the sum of $733.34. They were paid 48 per cent. of the total amount, and they credited the note with approximately two-thirds of the amount received. The open account was credited with the balance.

Defendant contends that he never knew of the agreement to release Williams & Stone until shortly before this suit was brought; that he learned of it only when plaintiff was pressing him for payment, whereupon he called upon Williams & Stone to make payment, and Williams informed him of the agreement to release.

Plaintiff contends that no release was given; that the assignment being in writing any parol evidence tending to prove a release or agreement to release was incompetent as an attempt to vary the terms of a written instrument, and also conceding that there was an agreement to release Williams & Stone, such agreement was void and contrary to public policy under laws of the state of Arkansas, which govern all transactions here involved.

Both parties agree that the laws of the state of Arkansas govern as to the transactions here involved. It is well established in Arkansas that an assignment for the benefit of creditors, which provides that no creditor shall participate in the assets unless he will accept his share in full satisfaction of his claim and gives no direction for the application of the surplus after satisfying assenting creditors, is void upon its face. Collier v. Davis, 47 Ark. 367; Nelson v. Harper, 122 Ark. 39; Simmons Hdw. Co. v. Rhodes, 7 Fed. Rep. (2nd) 352.

In the latter case, the deed of assignment did not contain the objectionable provision, and in the body of the opinion, it was said:

"* * * Where the prohibited stipulation for the release of the maker rests in parol, it must be proven, and, when established as a part of the assignment, the effect upon the assignment is the same as though it was found written therein. In Aaronson v. Deutsch (C. C.) 24 F. 465, Judge Caldwell, delivering the opinion, says: 'And a deliberate agreement, in or out of the deed, made at the time and carried into effect, to violate the statute, is a fraud upon the statute, and a fraud upon the legal rights of creditors,

which the law will redress by removing the fraudulent barrier to the assertion of their legal rights against their debtor."

The above cases are cited and relied upon by plaintiff, and it may be conceded that they correctly state the rule in Arkansas, but we think the facts in the instant case are not such as to bring the case within the rule set out therein, as is shown in the subsequent holding of the Supreme Court of Arkansas in Brown Shoe Co. v. Stone, 172 Ark. 1156. Therein, the court had under consideration the identical assignment involved herein. There it apears that Brown Shoe Company, one of the principal creditors of Williams & Stone, after having received the 48 per cent. dividend from the assignee, Bass, filed suit against Williams & Stone for $522.49, being the balance of their claim. Williams was not served, but Stone answered, and alleged that a meeting of all the creditors was called and held, and that at said meeting, the partners proposed to deliver over all the assets in liquidation and settlement of the outstanding debts, including that of Brown Shoe Company; that the proposition was accepted by the creditors and the agreement fully consummated, and all the assets were turned over to the trustee who was selected by the creditors, and that the creditors accepted the amount in full, final and complete settlement of all the obligations, including the debt of Brown Shoe Company; that the Brown Shoe Company was a party to the agreement entered into, acquiesced in and accepted the agreement and settlement thereunder, and received its pro rata share.

The assignee, Bass, was a witness, and testified there, in substance, as he did here, that the creditors represented felt that it was the best thing that could be done to save expense and save bankruptcy expense. The issue there was almost identical with the issue here.

In the trial court, verdict was returned against Brown Shoe Company, and upon appeal, it was urged that the trial court erred in admitting the evidence of, the agreement, as well as evidence tending to show that when creditors took charge of a debtor's property, it was the custom in that territory that the pro rata share of the property received by each creditor should be in satisfaction of the creditor's claim, and that such was the understanding in the case. The court in the opinion said:

"In the view that we take of this case, we do not think that the testimony was prejudicial. The appellant contends that the court erred in refusing to direct the jury to find for the plaintiff. It may be conceded that, if a debtor makes an assignment for the benefit of his creditors, with a provision in the deed that creditors must agree to accept their pro rata share in full settlement of their claim, the deed of assignment is void, and, if this condition was not in the deed, but was made at the time and carried into effect, it would be void."

The court then cites and quotes from Simmons Hdw. Co. v. Rhodes, supra; Collier v. Davis, supra; and Nelson v. Harper, supra; and in holding those cases not applicable says:

"The rule is well established in this state that a debtor cannot make an assignment with the condition that all persons who accept their pro rata part shall thereby extinguish their debt, but we have here a very different case from any of those relied on by appellant. The debtor in this case did not seek to coerce any of his creditors. It was the creditors themselves who met and agreed to take charge of all of the debtor's assets; the debtor had no voice in it, as it appears from the evidence; he simply executed the deed to the trustee selected by the creditors, with the provision agreed to by the creditors. They entered into this agreement, they say, to avoid bankruptcy, and, in notifying the creditors, the trustee expressly stated that there had been a meeting of creditors held, and, subsequent to that meeting, the deed of assignment had been made to the trustee for the benefit of all the creditors, share and share alike, and subject, of course, to their approval. He also stated in the letter that he was asked to act as trustee to avoid bankruptcy proceedings. He was representing the creditors, and not the debtor. This letter was received by the appellant, and, in response to that letter, it sent its verified account. Since the appellant knew that a deed of assignment was made for the benefit of all the creditors * * * for the purpose of avoiding bankruptcy, and knew that it was not to be carried out unless all the creditors agreed, it agreed to the arrangement by sending its verified account as requested, with the knowledge of all these facts."

In the instant case, the assignee, Bass, testifies that plaintiff was represented at the meeting; that all parties wanted to avoid bankruptcy; that in order to avoid bankruptcy, it was discussed that, by making an assignment, creditors would realize more: that the agreement made at the meeting was that, if Williams & Stone would make an assignment, those present would accept the proceeds in full settlement of their accounts. It will thus be seen that the case, so far as the agreement to release is con-

cerned, is squarely within the rule announced in Brown Shoe Co. v. Stone, supra.

It has been held in Arkansas before and since Collier v. Davis, supra, was written, that a debtor in making an assignment of his property for the benefit of creditors may exact a release from creditors where he unreservedly dedicates all his property not exempt by law to the payment of his debts. McReynolds v. Dedman, 47 Ark. 348; King v. Hargadine-McKittrick Dry Goods Co., 60 Ark. 1.

It appears to be only where the debtor, in exacting or stipulating for the release, requires his creditors or any of them to accept and grant the release and bars creditors who refuse to assent from sharing in the proceeds of the property, that an assignment containing such stipulation is void. Such a provision renders the assignment void for the reason that it, in effect, reserves the surplus, if any there be, to the debtor. Should one or more of the creditors decline to accept, and thus be barred from participating in the proceeds of the property, and the assignment still be held valid, it would operate to place the property beyond the reach of the dissenting creditors, and thus hinder and delay them in the collection of their just debts, and further would require that the surplus proceeds of the property be returned to the maker of the assignment, and thus work a reservation of the surplus to the grantor. It is this result that stamps such an assignment as constructively fraudulent.

This is clearly explained in McReynolds v. Dedman, supra, wherein it is said:

"The reservation of the surplus to the grantor stamps the deed as constructively fraudulent. To use the language of Ware, Judge, in the case of the Watchman, Ware's Rep., 247, the grantor prefers himself to a dissenting creditor. An insolvent debtor can reserve no use or benefit to himself out of the property assigned. He may stipulate for a release, but he must dedicate all of his property, not exempt by law, to the payment of all his creditors; not necessarily to the payment of all in equal proportions, for he may prefer such as will execute release. But the deed must provide for the distribution of any surplus that may remain in the hands of the trustee, after the payment of the preference creditors, amongst the other creditors, whether they assent or not."

Such is not the case here. Neither the assignment itself, nor the agreement shown by the testimony, required any creditor to accept and grant a release in order to participate in the proceeds of the property. The transaction is thus brought within the line of cases that hold a stipulation for a release valid where the debtor dedicates all his property to the payment of his debts, and reserves to himself no interest therein, expressly or by implication.

There was no error in admitting the evidence as to the agreement, and it follows that there was no error in refusing to direct a verdict for plaintiff. This, we think, disposes of all the assignments, since they are all based upon the proposition that the agreement or release, whether in the assignment or resting in parol, was void.

It being conceded that the transaction here involved, being an Arkansas contract, is governed by the laws of Arkansas, we think Brown Shoe Co. v. Stone, supra, is conclusive against plaintiff.

The judgment should be affirmed.

BENNETT, HERR, TEEHEE, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.