**Don AGNEW, Appellant,**
v.
**Annabelle COX, Appellee.**
No. 15869.

United States Court of Appeals
Eighth Circuit.
April 22, 1958.

Paul C. Sprinkle, Kansas City, Mo. (Sprinkle, Knowles & Carter, Kansas City, Mo., on the brief), for appellant.

Sam Mandell, Kansas City, Mo. (S. David Trusty and Popham, Thompson, Popham, Mandell & Trusty, Kansas City, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellee as plaintiff to recover damages on account of personal injuries. We shall refer to the parties as they were designated in the trial court.

It was alleged in plaintiff's complaint that while she was a passenger in an automobile being driven by her husband the automobile was negligently and violently struck from the rear by an automobile being operated by defendant Agnew, that defendant carelessly and negligently operated his automobile at a high and dangerous rate of speed, carelessly and negligently failed to keep a proper lookout ahead, carelessly and negligently failed to stop or slow his automobile but negligently permitted his automobile to collide with the rear of the automobile in which plaintiff was a passenger, carelessly and negligently failed to turn his automobile aside and avoid striking the automobile in which plaintiff was a passenger, and carelessly

and negligently failed to use ordinary care in the operation of his automobile so as to avoid striking and colliding with the automobile in which plaintiff was a passenger; that as a result of the negligence on behalf of defendant she suffered serious injuries to her head, neck, back, spine, body and limbs as a result of which she had undergone and will undergo in the future medical care and treatment and will continue to endure physical pain and suffering. She also alleged that because of her injuries she had been caused to be hospitalized at great expense. She specified and enumerated the character of her injuries and sought damages in the amount of $50,000.

Defendant Agnew by answer put in issue all the material allegations as to his negligence and pleaded that the injuries suffered by plaintiff were due to the negligence of plaintiff in that:

"* * * the driver of the car in which she was seated brought same to a sudden, violent, unusual, unexpected and unnecessary stop without giving a signal when by the exercise of ordinary care on her part she could have warned the driver in time so that the driver could have avoided stopping in the manner aforesaid and the collision would not have occurred."

The action was tried to the court and a jury and at the close of plaintiff's evidence the defendant moved for a directed verdict which was denied. This motion was renewed at the close of all the testimony and again denied by the court and the case was submitted to the jury on instructions to which no exceptions are here urged. The jury returned a verdict in favor of plaintiff in the amount of $20,000. Thereupon the court entered judgment pursuant to the jury's verdict. Defendant then moved for a new trial on the ground that the verdict was excessive and other enumerated grounds. This motion was denied.

From the judgment so entered defendant prosecutes this appeal and seeks reversal on the sole ground that the verdict was excessive, the result of passion and prejudice on the part of the jury, and the trial court erred in failing to sustain his motion for new trial because of that fact.

No error is urged as to the ruling of the court in denying defendant's motion for a directed verdict, no error is urged as to any of the rulings of the court on the question of the admissibility of evidence, and neither is any error urged as to the instructions given the jury. In this condition of the record we must assume that no prejudicial errors occurred during the course of the trial and our examination of the evidence, if that is necessary, will be limited to the question of the extent of plaintiff's injuries. In considering this question we must view the evidence in a light most favorable to the plaintiff as the prevailing party and assume that all conflicts in the evidence have been resolved in her favor. As so viewed the jury might from the evidence have found that plaintiff at the time of trial was thirty-eight years of age, a housewife and the mother of four children aged fourte, twelve, nine and six years of age respectively; that in 1940 her appendix was removed with satisfactory results and she was in good health thereafter until the time of the accident involved in this action; that at the time of the accident plaintiff's body was thrown forward violently but her neck and head went backward and that shortly after the collision she just seemed to go to pieces, her teeth began to chatter, she began to cry and she could not move her neck normally. When examined by her doctor shortly following the accident plaintiff could not get her head off the pillow; that her neck and whole back were hurting and paining and she was nauseated; that about two days after the accident a bulging appeared at the site of her appendicitis operation scar; that later she was ordered into the hospital where she was X-rayed for various injuries; that she was there treated for a week and given treatment particularly for her physical pain and suffering;

that she started menstruating at the hospital and had severe pain all through her abdomen and through her organs; that she had never had any difficulty with her menstrual periods before; that while in the hospital she was fitted with a brace which came down over her shoulders; that it had two cups to hold up her chin and the back of her head; that she wore the brace four to six weeks when her physician removed it because of the pain it caused her right shoulder and arm, which would first be painful and then become numb; that another brace was fitted which she wore for about three weeks; that when the brace was on it was a help to her neck and back but that after she wore it a while her right arm would paralyze and hurt and the brace would have to be removed; that she had severe headaches beginning right after the collision; that the pain in her back and through her shoulders and in her neck had been tremendous; that she tries to do her housework as best she can but is unable to do it as formerly because of the pain; that when the pain becomes too severe she gets weak and nauseated and sick and her legs go numb and won't move and then she must lie down.

Plaintiff testified that the trouble with her menstrual periods still continues since the accident; that for the first two days she is just down in bed, does not even get up and has so much severe pain through her abdomen and down through her female organs and down through her back that it is just impossible to get up; that her relations with her husband are just too painful and as much as she cares for and loves her husband it is almost too agonizing to have any relations with him; that her neck gives her a lot of trouble and she has a hard time turning it at times; that her back aches continuously and her legs ache; that she gets weak and is highly nervous and that her eyesight has been affected since the accident.

The jury, we may presume, believed that the plaintiff's injuries and suffering were properly delineated and described by the testimony of her physician who in substance testified that when he first saw plaintiff she complained of inability to turn her head, severe pain in her neck and the back of her head and in her back; that there was a marked deformity in the upper part of her back and some arthritis lower down in her spine and that his X-rays showed that some of these arthritic processes had been broken off in the collision; that the misalignment in her neck existed before the collision and made her neck and back peculiarly susceptible to injury; that the breaking off of the osteo-arthritic lipping on the vertebral bodies in the accident produced a very painful condition and is likely to cause a development in the backbone which continues to be painful, is likely to induce continued pain in the future and the tendency is for it to become worse; that when he examined plaintiff at the hospital he noticed quite an area of tenderness and bulging just above the post-operative scar and a marked depression in the scar which in his opinion was a manifestation of a tearing of the adhesions following the appendicitis operation; that he was quite sure that there was undoubtedly some tearing of the adhesions which affected the uterus and the bowel as the result of the sudden blow to the rear of the automobile in which the plaintiff was riding; that the tearing of the adhesions at the time of the accident are causing plaintiff difficulty with her menstrual periods and abdominal pain, and pain in the region of her female organs; that in addition she is suffering from a traumatic neurosis which has increased the pains in her belly and the nausea and sick feeling she gets; that traumatic neurosis is a nervous and mental condition following injury and is produced by the injury itself to a certain extent but mostly by the pain and suffering following the injury, and that when a traumatic neurosis develops its pains are just as severe, if not more severe, than if actual pathology of injury is present; that on his last examination of plaintiff a day or two before the trial plaintiff

complained of pain and stiffness of her neck, headaches, extreme nervousness, pain in her abdomen, pain in her right arm, right shoulder, tenderness in her abdomen and a numb-like feeling in her right leg; that in his opinion her pelvic organs are relatively normal except for the adhesions to the uterus; that there was a marked depression in the abdomen and physical evidence of adhesions; that there was limitation of motion in turning the head, particularly to the right, caused in his opinion by the whiplash injury plaintiff sustained; that in the presence of the deformity of plaintiff's neck the whiplash injury has caused the stiffness and pain in the neck which in his opinion radiates up into the head and has a lot to do with her headaches, though some of her headaches are part of her traumatic neurosis; that she is suffering from severe pain and stiffness of the neck, pain in her back, pain in her abdomen and alteration of her menses with severity of pain at that time; that she has headaches and that change of vision quite often is a complaint following whiplash injury to the neck; that any blow may affect the sympathetic nervous system and send the impulses into the brain and manifest evidence of pathology by some disturbance in vision, or even in hearing, and that he is of the opinion that that is the part involved which has had something to do with her decrease in vision since the accident; that the conditions which he found and described were painful and disabling so she cannot carry on normal activity; that her headaches, nervousness and possibly some of her pelvic disturbances can be improved and that if the treatment he recommended for the pelvic disturbances does not improve that condition surgery will be indicated; that the neck condition and the condition of the vertebrae and the back are permanent and in his opinion the back condition will get worse and the probabilities are that the neck condition will get worse; that X-rays made a few days before the trial show more extensive lipping in the upper dorsal area than the earlier films; that there are three vertebrae where the lipping was torn or broken loose as the result of the strain imposed upon plaintiff's back in the accident and in his opinion there was X-ray evidence of trauma.

There was evidence from which the jury might well have concluded that plaintiff's injuries were permanent and that she would continue to suffer physical pain.

The scope of our inquiry, if any, as to the facts in this case is of necessity limited to the question of the extent of plaintiff's injuries and the amount of damages that may compensate her therefor.

At the threshold of this invited inquiry we must consider the applicable law. The Seventh Amendment to the United States Constitution among other things provides that:

"* * * no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

At common law at the time of the adoption of this amendment the only rule or method of re-examining a fact tried by a jury was by motion for new trial. The only method of re-examining or determining the sufficiency of the facts to sustain a verdict or judgment in Federal court is by raising the question in the trial court by motion for directed verdict, thereby raising a question of law which may be reviewed by this court. We have consistently held that the question of the alleged excessiveness of a verdict in a tort case will not be reviewed but is a question to be determined by the trial court. Zimmerman v. Mathews Trucking Corp., 8 Cir., 203 F.2d 864; Glendenning Motorways v. Anderson, 8 Cir., 213 F.2d 432; National Alfalfa Dehydrating & Mill. Co. v. Sorensen, 8 Cir., 220 F.2d 858; Railway Express Agency v. Epperson, 8 Cir., 240 F.2d 189.

Confessedly the question of the alleged excessiveness of a verdict can-

not be raised by motion for a directed verdict but may only be raised by motion for new trial and we have invariably held that a motion for new trial is addressed to the sound discretion of the trial court. In Zimmerman v. Mathews Trucking Corp., supra, [203 F.2d 868] we had occasion to consider the question of the alleged excessiveness of the verdict and in the course of the opinion we stated the controlling rule as follows:

"This Court has consistently adhered to the proposition that the responsibility for keeping jury awards within reasonable bounds is essentially that of the trial courts and not of this Court."

In National Alfalfa Dehydrating & Mill. Co. v. Sorensen, supra [220 F.2d 861], adhering to the prior decisions of this court and the controlling rule with reference to the right to review the question of the alleged excessiveness of a verdict in a tort case, we said:

"Defendant's first contention is that the verdict is excessive. The short answer to this contention is that in Federal courts in tort cases the question of the alleged excessiveness of the verdict is not reviewable on appeal. See Glendenning Motorways v. Anderson, 8 Cir., 213 F.2d 432, and cases there cited. What the rule may be in state courts we need not consider as this is a procedural matter."

If we were called upon to decide the question of the excessiveness of this verdict we would feel impelled to hold that the verdict, although a large one, is not so monstrous as to shock the judicial conscience. Defendant not having complained of errors occurring during the trial of this case, we must assume that he had a fair and impartial trial. The error, if any, here urged is an error of fact which is not reviewable and the judgment appealed from is affirmed.