**SOLOMON DEHYDRATING COMPANY, Incorporated, Appellant,**

v.

**Clarence R. GUYTON, Appellee, Central Greyhound Lines, Incorporated, and The Greyhound Corporation, Appellees.**

**No. 16584.**

United States Court of Appeals Eighth Circuit.

July 19, 1961.

Rehearing Denied Aug. 31, 1961.

Charles B. Paine, Grand Island, Neb., Kenneth H. Dryden, Kearney, Neb., on the brief, for appellant.

Warren C. Schrempp, Omaha, Neb., Henry C. Rosenthal, Jr., Omaha, Neb., on the brief, for appellee Clarence R. Guyton.

Lyle E. Strom, Omaha, Neb., James J. Fitzgerald, Jr., Omaha, Neb., on the brief, for appellee Greyhound Corporation.

Before VOGEL and BLACKMUN, Circuit Judges, and BECK, District Judge.

BLACKMUN, Circuit Judge.

This diversity action arises out of a bus-truck collision which took place about 1:45 a. m., July 29, 1959, on U. S. Highway No. 30 three and three-quarter miles east of Kearney, Nebraska. The vehicles concerned were an eastbound Greyhound Scenicruiser bus traveling the highway on a regular run and a northbound 2-ton truck endeavoring to cross the artery. The night was clear and the pavement was dry.

Clarence R. Guyton, age 60, was the bus driver. The Greyhound Corporation was the owner of the bus. Arnold Fisher was the truck driver. Solomon Dehydrating Company, Incorporated, was the owner of the truck. Fisher was Solomon's employee; he was working on the night in question and was driving the truck in the course of his employment.

Guyton sued Solomon for personal injuries sustained in the accident. He joined Greyhound as a defendant, as he was required to do by § 48–118, 1960 Reissue of Volume 3A, Revised Statutes of Nebraska of 1943, in order to determine his employer's subrogation rights under the Nebraska Workmen's Compensation Law. Solomon filed a counterclaim against Guyton and a cross-claim against Greyhound for damages to its truck. Greyhound filed a cross-claim against Solomon for damages to its bus and for loss of its use. All these claims were based upon the alleged negligence of Fisher and Guyton, respectively. Jury verdicts of $74,132.63 in favor of Guyton against Solomon and of $16,356.77 in favor of Greyhound against Solomon were returned. The jury also rendered verdicts in favor of Guyton and Greyhound on Solomon's counter and cross-claims. Judgments were entered accordingly. Solomon has appealed.[1]

We have often observed that no useful purpose is served in setting forth in detail the evidence in these personal injury cases arising out of automobile accidents. Berlo Vending Co. v. Massey, 8 Cir., 260 F.2d 832, 833; Johnson v. Hill, 8 Cir., 274 F.2d 110, 112. We therefore refer to the facts here only as it becomes necessary so to do in considering the issues before us.

The appellant urges as error:

1. *The insufficiency of the evidence.* This is directed both to the submission to the jury of claimed specific acts of negligence on the part of Fisher and to the trial court's denial of Solomon's motion for judgment notwithstanding the verdicts. The appellant's argument centers primarily on what it regards as inconsistencies within the plaintiff's evidence of such degree and of such contrariety to undisputed physical facts as to require the evidence to be disregarded.

We are aware, as Solomon urges, (a) that the fact Fisher drove the truck onto the highway does not, standing alone, establish negligence on his part, Bezdek v. Patrick, 167 Neb. 754, 94 N.W.2d 482, 491; (b) that

"Where a plaintiff, without reasonable explanation, testifies to facts materially different concerning a

1. Our denial of the appellant's motion to discharge or reduce the attachment which has been made against it as a non-resident under § 25–1001, 1956 Reissue of Volume 2, Revised Statutes of Nebraska of 1943, is reported at 283 F.2d 247.

vital issue than had previously been testified to by him under oath in another action, the change clearly being made to meet the exigencies of the pending action, the evidence is discredited as a matter of law and should be disregarded". Gohlinghorst v. Ruess, 146 Neb. 470, 20 N. W.2d 381.

Rahfeldt v. Swanson, 155 Neb. 482, 52 N.W.2d 261, 266; Carranza v. Payne-Larson Furniture Co., 165 Neb. 352, 85 N.W.2d 694, 697; and (c) that testimony which is in conflict with undisputed physical facts is not entitled to credence, Dodds v. Omaha & C. B. St. Ry. Co., 104 Neb. 692, 178 N.W. 258, 261; Varnum v. Union Pac. R. Co., 112 Neb. 340, 199 N.W. 503, 505; Hessler v. Bellamy, 128 Neb. 571, 259 N.W. 514, 515; United States v. Harth, 8 Cir., 61 F.2d 541, 544; Liggett & Myers Tobacco Co. v. De Parcq, 8 Cir., 66 F.2d 678, 683, certiorari denied 298 U.S. 680, 56 S.Ct. 947, 80 L.Ed. 1400; Jacobson v. Chicago, M., St. P. & P. R. Co., 8 Cir., 66 F.2d 688, 693. But we are also aware (a) that where there is a reasonable dispute as to what the physical facts show, conclusions to be drawn therefrom are for the jury, Kroeger v. Safranek, 165 Neb. 636, 87 N.W.2d 221, 224–225, and (b) that in a situation such as the one before us

"We are required to determine whether there is any substantial evidence upon which the verdicts for the plaintiffs could properly be based. For the decision of that question, we must assume as established all the facts that the *evidence supporting the plaintiffs' claims* reasonably tends to prove and that there should be drawn in the plaintiffs' favor all the inferences fairly deducible from such facts. * * * We must also give effect to the rule that issues that depend upon the credibility of witnesses, and the effect or weight of evidence are to be decided by the jury". Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 439.

See, also, Hanson v. Ford Motor Co., 8 Cir., 278 F.2d 586, 596.

The claimed variances in Guyton's own testimony are differences between his testimony at the trial and that given on two depositions before trial. One of the depositions was taken by the State for a justice court proceeding it brought against Fisher; the other was taken on behalf of Solomon in the present action. Disparities between Guyton's testimony and that of other witnesses on his behalf are also pointed out. These all have to do in the main with (a) the location of the truck when Guyton first saw it; (b) the distance between the bus and the truck when Fisher stopped at the stop sign; (c) the point where Guyton first applied his brakes; (d) the point where the bus and a westbound transport vehicle passed each other on the highway; (e) the position of the transport (the existence of which Fisher denied) when its driver saw the truck stop; (f) the speed of the truck; and (g) the place of impact. A chart of these differences in the evidence was included in the appellant's brief; that brief also sets forth at length mathematical interpretations of the testimony and attempts to prove the impossibility of the accident having taken place if parts of the testimony are true. We have studied the chart and these computational arguments.

While a mathematical approach is often forceful and is sometimes persuasive, it is not convincing here. We have in mind that this accident took place in very early morning hours; that it was dark at the time; that distances at night may be difficult to estimate with complete accuracy; that the vital events, namely, the passing of the bus and the transport, the emergence of the truck onto the highway, the application of the brakes of the bus, its swerve to the north, and the speed of the truck, all took place or required observation within passing seconds; and that, where time and area are compressed, differences of only a few miles per hour in speed or of only a few feet in distance lead to vividly contrasting results.

While there are discrepancies here (and, for that matter, in Fisher's testi-

mony, too), there is also corroborating testimony. We regard the appellant's contentions on this point as material essentially appropriate for an argument to a jury rather than to an appellate court which is confined, as to this aspect of the case, to the limits specified by the Elzig and Hanson cases cited above. Any disparity in testimony here, it seems to us, is not of that degree of offensiveness which requires disbelief as a matter of law. We feel that it is of the nature and kind so often encountered in the normal give and take of a vigorously contested lawsuit concerned with the crowded events of a few short moments. We may appropriately assume that these variances were artfully argued to the jury. The factual situation is obviously different from those presented by Gohlinghorst and its line of cases, supra, urged upon us by the appellant. The Nebraska court has described and distinguished its conclusions in those cases as being grounded upon estoppel elements and the conviction that the plaintiff's testimony if permitted would result in a mockery of justice. Kipf v. Bitner, 150 Neb. 155, 33 N.W.2d 518, 523–524; Angstadt v. Coleman, 156 Neb. 850, 58 N.W.2d 507, 513–514; Kirchner v. Gast, 169 Neb. 404, 100 N.W.2d 65, 74–75. We feel that the situation here is one presenting nothing more than a reasonable dispute about physical facts and that, to the extent testimony discrepancies do exist, they are in the nature of admissions for the jury to consider and are thus controlled by the Kipf, Angstadt and Kirchner cases rather than by Gohlinghorst.

■ We readily conclude that the evidence was sufficient and appropriate to take the questions of Fisher's negligence to the jury.

2. *The exclusion of the testimony of Solomon's expert witness Weiland concerning the speed of the bus.* Weiland was a consulting engineer and professor of mechanical engineering at the University of Nebraska. That he was "eminently qualified in his field" was recognized by the trial court. He had examined neither the accident scene nor the vehicles involved. He testified, however, that he had seen the exhibits and heard the trial testimony and that he is able to calculate the speed of vehicles just prior to collision if he has examined the exhibits and knows the type of road surface, the length of skid marks, the distance the vehicles traveled after the collision, the weights of the vehicles and the relative amount of damage. The usual hypothetical question was propounded. An objection thereto, setting forth claimed defects in the question, was sustained. An offer of proof was made to the effect that, if the witness were permitted to answer, his opinion would be that the bus must have been traveling at least 65 m. p. h. at the time of the collision.

■ We recognize that the propriety of admission of expert testimony is controlled by the rule applied in the federal courts or by the prevailing Nebraska rule, whichever favors its reception, Rule 43(a), F.R.Civ.P., 28 U.S.C.A., and that under Nebraska law "a qualified expert may give his opinion as to the speed of the automobile, based on the length of the skid marks, made by it". McKinney v. Wintersteen, 122 Neb. 679, 241 N.W. 112, 114; Tate v. Borgman, 167 Neb. 299, 92 N.W.2d 697, 701; Nisi v. Checker Cab Co., 171 Neb. 49, 105 N.W.2d 523, 529.

■ We conclude, however, that the trial court did not err in sustaining the objection to Professor Weiland's opinion testimony as to the speed of the bus. While both Guyton and Greyhound assert several claimed defects in the hypothetical question, it is sufficient to say that the question's inclusion of an assumption that "the truck was pushed sidewise in an Easterly and Northerly direction for a distance of approximately 110 feet" is enough to render the question objectionable and the answer inadmissible. There is no evidence in the record which supports a conclusion that the truck was *pushed* sidewise by the bus. True, the truck ended up at a distance from the point of contact. The truck and the bus, however, went their respective ways. The truck eventually landed on its right

side north of the highway. The bus remained upright and finally stopped in the borrow pit south of the road. Fisher was thrown clear of his truck and did not know what happened to it after the impact. Neither, apparently, did Guyton or any other witness. The driverless truck, so far as this record shows, may well have reached its ultimate destination, before it turned on its side, in part by the power of its own first gear. Inasmuch as the hypothetical question embraced an important fact not supported by the evidence, it is defective and subject to objection. Metropolitan Life Ins. Co. v. Armstrong, 8 Cir., 85 F.2d 187, 190; Aetna Life Ins. Co. v. McAdoo, 8 Cir., 106 F.2d 618, 622; Wessel v. City of Lincoln, 145 Neb. 357, 16 N.W.2d 476, 481; McNaught v. New York Life Ins. Co., 143 Neb. 213, 9 N.W.2d 160, 12 N. W.2d 108, 113.

3. *The instruction as to the right-of-way line.* The highway pavement at the place of the accident was 24 feet wide. A stop sign on the intersecting road was 25 feet south of the south edge of the pavement and was at the south side of a small bridge or culvert. There is no question that Fisher brought his vehicle to a complete stop at the stop sign. There is also no dispute that once he left that spot he did not stop again before the collision.

Section 39-729, 1960 Reissue of Volume 3, Revised Statutes of Nebraska of 1943, reads in part:

"All vehicles entering or crossing highways or railroad crossings on which stop signs are erected shall come to a full stop as near the right-of-way line as possible, before entering or crossing such highway or railroad crossings, and, regardless of direction, shall give the right-of-way to vehicles upon the highways to be driven upon or crossed."

The trial court in its instructions, after quoting this statute and then paraphrasing it, stated:

"The right-of-way line as used in the statute means that portion of the highway set aside for public travel. As applied to this case therefore, bearing in mind that Highway 30 in the area in question is a state and federal highway, and because of the stop sign at the intersection in question, it would be the duty of a driver approaching Highway 30 to come to a full stop as near the curb line—or right-of-way line—as possible before driving onto it and give the right-of-way to vehicles upon the highway until such time, after stopping, as he could drive onto the highway without interfering with the traffic thereon."

An exception to this was taken by Solomon "for the reason that the right-of-way line of highways under the statutes of the State of Nebraska is not defined thusly, and it is the intention of said statute to define the right-of-way line as the outside line of the highway, itself, and is not confined to just the main traveled portion of said highway." Solomon also tendered its own instruction relative to stop signs; this is set forth in the margin.[2] The grounds here specified by Solomon for his objection to the instruction are that it is vague, indefinite, and con-

2. "You are instructed that stop signs are usually erected some distance from the entrance to a through highway in order to afford approaching motorists time to stop before they reach the highway. *It may not be sufficient to stop where the stop sign is erected in order to comply with the statute requiring motorists to stop at the entrance to the highway as near the right-of-way line as possible.* The driver of a motor vehicle about to enter upon a favored highway should stop at a place where he can see in both directions and should not pull out into the highway without first determining that such movement of his vehicle can be made with reasonable safety to himself and to those traveling upon the favored highway, and he should look in both directions and permit all vehicles to pass which are at such distance and traveling at such a rate of speed that it would be obviously dangerous or imprudent for a driver to proceed into said intersection." (Emphasis supplied.)

fusing, that it is prejudicial in view of the court's further instruction that violation of a statute was evidence of negligence, that it is incorrect, and that the standard it sets up is absurd and impractical.

 We feel that this contention of the appellant cannot prevail. We note initially that objections of vagueness, indefiniteness and confusion were not made in the trial court. This being so, they cannot be raised for the first time on appeal. Rule 51, F.R.Civ.P., 28 U.S. C.A.

"There are two answers to appellant's criticism of the court's original charge to the jury. The first is that the appellant made no objection to the charge on the grounds now assigned for reversal." Hansen v. St. Joseph Fuel Oil & Manufacturing Co., 8 Cir., 181 F.2d 880, 885, certiorari denied 340 U.S. 865, 71 S.Ct. 89, 95 L.Ed. 633.

Furthermore, the appellant's own requested instruction is not out of line with the instruction given.

"A party cannot complain of an alleged error in instructions when the same error is found in its own instructions." Krienke v. Illinois Central R. Co., 7 Cir., 249 F.2d 840, 846.

Twentieth Century-Fox F. Corp. v. Brookside Theatre Corp., 8 Cir., 194 F.2d 846, 855, certiorari denied 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348; Badgett v. Johnson-Fife Hat Co., 8 Cir., 85 F. 408, 411; Little Rock & M. R. Co. v. Moseley, 8 Cir., 56 F. 1009, 1010; Silverman v. Travelers Ins. Co., 5 Cir., 277 F. 2d 257, 262.

Finally, the trial court's instruction does not appear to be inconsistent with the interpretation given the statute by the Supreme Court of Nebraska. The appellant points out that § 39–741(5), 1960 Reissue of Volume 3, Revised Statutes of Nebraska of 1943, defines the term "highway" to mean " * * * every way or place of whatever nature open to the use of the public, as a matter of right, for the purposes of vehicular travel * * * " and that the Nebraska court has adopted this definition in connection with automobile litigation. Koutsky v. Grabowski, 150 Neb. 508, 34 N.W.2d 893, 897. Subdivision (9) of § 39–741, however, also defines "right-of-way" to mean "the privilege of the immediate use of the highway" and thus connects the phrase with use.

In Styskal v. Brickey, 158 Neb. 208, 62 N.W.2d 854, 860, the Nebraska court related the phrase "curb line", employed by the trial court here, to their statutes' several uses of the phrase "right-of-way line":

"Bearing in mind that Railroad Avenue is a state highway carrying U. S. Highways Nos. 73 and 75 it would ordinarily, because of the stop sign, be the duty of any driver of a vehicle approaching it to come to a full stop as near the curb line as possible before driving onto it and give the right-of-way to vehicles upon the highway until such time, after stopping, as he could drive onto the highway without interfering with the traffic thereon. See sections 39–724 and 39–754, R.R.S.1943."

This language was quoted with approval in the case of Paddack v. Patrick, 163 Neb. 355, 79 N.W.2d 701, 705; in that case the court went on to say, at pages 706–707 of 79 N.W.2d:

"Under this situation we think the following, quoted from Bohnen v. Gorr, 234 Minn. 71, 47 N.W.2d 459, 464, has particular application to appellant's driving under the circumstances here shown: 'A stop sign is intended to warn motorists of the presence of a through or arterial highway. Our statute requires the driver of a vehicle approaching a through highway to stop at the entrance to such highway. Stop signs are usually erected some distance from the entrance to the through highway in order to afford approaching motorists an opportunity to stop before they reach the highway. Where the view of a high-

way is obstructed at the point where a stop sign is erected, it may not be sufficient to stop where the sign is erected in order to comply with the statute requiring a motorist to stop at the entrance to the highway.' "

Although the intersection here was clear and unobstructed, we gather from these comments of the Nebraska court that relating the phrase "curb line" to the statute in question is proper and is intended to signify not the more distant real estate boundary concept of a right-of-way line but, instead, the traveled portion of the highway. This being so, the trial court's instruction was not incorrect under Nebraska law.

4. *The excessiveness of the verdict in favor of Guyton.* As has been noted, Guyton's verdict against Solomon was for $74,132.63. Solomon claims that this is excessive.

This court has expressed itself many times, and very specifically, on the issue of the reviewability of a judgment claimed to be excessive. We have gone so far as to say, "The assignment of error that the verdict is excessive is not properly addressed to this court", New York, C. & St. L. R. Co. v. Affolder, 8 Cir., 174 F.2d 486, 493, and cases cited, reversed on other grounds 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683; National Alfalfa Dehydrating & Mill. Co. v. Sorensen, 8 Cir., 220 F.2d 858, 861. We have stated that the excessiveness of a verdict "is not a question for our consideration" but is a matter directed "solely to the judgment and the conscience of the trial judge on motion for a new trial". St. Louis Southwestern Ry. Co. v. Ferguson, 8 Cir., 182 F.2d 949, 954. In reaching this result we have referred at times to the Seventh Amendment and to the common law as it existed in 1791 upon the Amendment's adoption, Myra Foundation v. United States, 8 Cir., 267 F.2d 612, 614; Agnew v. Cox, 8 Cir., 254 F.2d 263, 267, and to earlier English and federal cases, St. Louis Southwestern Ry. Co. v. Ferguson, supra, at page 955 of 182 F.2d. Instances within the last three plus years of our continuing adherence

to the general rule we have expressed are American Surety Co. v. Schottenbauer, 8 Cir., 257 F.2d 6, 13–14; Myra Foundation v. United States, supra, at page 614 of 267 F.2d; McDonnell v. Timmerman, 8 Cir., 269 F.2d 54, 62–63; Johnson v. Hill, supra, at page 117 of 274 F.2d; and Lycon v. Walker, 8 Cir., 279 F.2d 478, 485; see also MacDonald Engineering Co. v. Hover, 8 Cir., 290 F.2d 301.

On the other hand, we have intimated that reviewability might be in order "as a matter of correcting an absolutely plain injustice, in the interest of judicial administration itself", Louisville & N. R. Co. v. Botts, 173 F.2d 164, 170, or "in the exceptional case, 'where the verdict is so manifestly without support in the evidence that failure to set it aside amounts to an abuse of discretion' on the part of the trial court", Chicago & N. W. Ry. Co. v. Curl, 8 Cir., 178 F.2d 497, 502, or where the verdict is "so excessive as to be monstrous or to shock the judicial conscience", Chicago, Rock Island & Pacific R. Co. v. Williams, 8 Cir., 245 F.2d 397, 406, certiorari denied 355 U.S. 855, 78 S.Ct. 83, 2 L.Ed.2d 63; Agnew v. Cox, supra, at page 268 of 254 F.2d; Chicago Great Western Ry. Co. v. Casura, 8 Cir., 234 F.2d 441, 448–449; Glendenning Motorways v. Anderson, 8 Cir., 213 F.2d 432, 437; St. Louis Southwestern Ry. Co. v. Ferguson, supra, at pages 955–956 of 182 F.2d. And in at least one instance, we have reversed a judgment because, among other things, we concluded that the verdict was "so excessive as to shock the conscience" and was "not fairly supported by the evidence", Missouri-K.-T. R. Co. of Texas v. Ridgway, 8 Cir., 191 F.2d 363, 368, 29 A.L.R.2d 984.

We recognize now, as we did ten years ago in Ridgway, supra, at page 367 of 191 F.2d, that other federal circuits have held "that an appellate court may review as a question of law whether the trial court abused its discretion in refusing to set aside a verdict for excessiveness". We are also aware that Professor Moore in Volume 6, Moore's Federal Practice, Second Edition 1953, Par. 59.08[6], pp.

3824, 3827–3829, 3834, 3836 and 3839, has observed that

"The reviewability of a trial court's grant or denial—usually the trial court's denial—of a motion for new trial on the ground of inadequacy or excessiveness has been the subject of much discussion. And, as we shall see, there is considerable conflict in the decisions as to the power of an appellate court to review, with the current tendency, however, in the direction of a broader appellate review * * * Recently, the courts of appeals faced with the question of review have generally ignored the Seventh Amendment issue * * * And so, under one theory or another, the Seventh Amendment does not interdict all appellate review of the trial court's ruling. * * * Despite the above criticism [Judge Learned Hand's in Miller v. Maryland Casualty Co., 2 Cir., 40 F.2d 463, 465], with deference, we submit that such a review is apropos and convenient * * * (T)he Eighth and the Second Circuits are the most adamant expounders [of the doctrine of non-reviewability] '* * * The theory upon which the majority of the circuits review * * * is that the trial judge has abused his discretion. * * * Thus, the First, Third, Fourth, Sixth, Seventh, Ninth and Tenth Circuits and the District of Columbia now recognize that they may reverse a judgment even though the only basis for review is the inadequacy or excessiveness of the verdict".

Since the 1953 edition of Moore's treatise, the Fifth Circuit has clearly stated that it may review the question of excessiveness on the theory that abuse of discretion is an error of law. Silverman v. Travelers Ins. Co., 5 Cir., supra, 1960, at pages 259–260 of 277 F.2d, and cases cited. And just a few weeks ago the Second Circuit arrived at the same result (although still concluding that the verdict there should not be disturbed) in a comprehensive opinion by Judge Medina where legal commentaries and cases in 47 states and in all the federal circuits were cited and where the Court concluded that the Seventh Amendment presented no barrier to review.[3] Dagnello v. Long Island R. R. Co., 1961, 289 F.2d 797. On the other hand, Professor Charles Alan Wright, for one, is not so enthusiastic about this trend. Wright, *The Doubtful Omniscience of Appellate Courts*, 1957, 41 Minn.L.Rev. 751, 752–758; 3 Barron and Holtzoff, *Federal Practice and Procedure* (Wright Revision 1958) § 1302.1, pp. 348–352.

 We are not sure that this circuit is quite the "adamant expounder" of the doctrine of non-reviewability which Professor Moore and Judge Medina (by quoting Moore, at page 800 of 289 F.2d) would make us out to be. Our expressions in the Botts, Curl, Williams, Agnew, Casura, Anderson, Ferguson and Ridgway cases, all supra, could be said to contraindicate that. And we wonder whether in fact we did start "to wobble a bit" eleven years ago, as suggested at page 802 of 289 F.2d. We do emphasize again, however, that in our opinion, inadequacy or excessiveness of a verdict is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; and that we shall continue to consider review, as we have said before, not routine-

3. It seems fair to say that the Supreme Court has not directly decided the Seventh Amendment issue. See Southern Ry. Co. v. Bennett, 233 U.S. 80, 87, 34 S. Ct. 566, 58 L.Ed. 860; Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603;

Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439; Affolder v. New York, C. & St. L. R. Co., 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683; Neese v. Southern Railway Co., 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60.

ly and in every case, but only in those rare situations where we are pressed to conclude that there is "plain injustice" or a "monstrous" or "shocking" result. Perhaps this is saying nothing more and nothing different than what the other courts of appeals have said in varying language.[4] Perhaps in practice this court has observed a somewhat tighter standard than the others. In any event, we still adhere to it.

 In any event also (and again employing what seems to be the usual alternate approach), we are convinced that, irrespective of the theory one might choose to advance in favor of reviewability—sufficiency of the evidence to support the verdict, abuse of discretion, historical approach, and so on—the verdict in this particular case must remain undisturbed. We are aware of the details of the medical testimony concerning Guyton—the fractures, the knock-kneed deformity, the right foot drop, the first reduction, the arthrodesis of the hip, the bone graft, the fibrosis, the application of casts, the right thigh atrophy, the hospitalization, the percentages of disability, and the other facts of injury and treatment. We need not further describe them or his prognosis or the parties' respective approaches to the computation of special damages. Guyton's verdict was substantial; it may have been more than any of us would have been willing to allow had we been sitting as jurors, and it may have been more than any of us would have approved had we been the trial judge. To say that, however, is merely to express a possibility and one darkened by our absence from the trial itself. We recognize, too, that the evidence shows that Guyton apparently refused, up to the trial, to undergo further surgery, which had been at least suggested and which might have effected some alleviation in the disability of his lower right extremity, and that he apparently also refused to wear a recommended right foot brace. Having in mind the extent of the plaintiff's injuries, his age, his earning power, and his life expectancy, we nevertheless conclude that this verdict is not so out of line as to be deemed legally excessive in the light of our cases already referred to.

 5. *The failure to instruct the jury as to the substance of § 39–723.01.* Section 39–723, 1960 Reissue of Volume 3, Revised Statutes of Nebraska of 1943, in effect at the time of the accident, fixes speed limits for motor vehicles. For a highway outside a city or village it establishes initially a "reasonable and proper" speed standard but goes on to state that no person shall operate a motor vehicle " * * * in any case, except the motor vehicles specified in section 39–723.01, at a rate of speed exceeding * * sixty-five miles per hour between the hours of sunrise and sunset, and fifty-five miles per hour between the hours of sunset and sunrise, upon any concrete, brick, macadamized, or other hard-surfaced highway * * * ". § 39–723.01 then provides:

> "It shall be unlawful for the driver of any vehicle towing a trailer or semitrailer or of a freight-carrying vehicle, if the gross weight of said freight-carrying vehicle including any load thereon is more than five tons, to drive the same at a speed exceeding fifty miles per hour."

The gross weight of the bus was over five tons. Guyton admitted that the bus "sometimes carried freight but I don't know whether it had any that night". He also testified that at the time of the accident he was driving between 50 and 55 m. p. h. and that he had just traveled the approximately 98 miles from North Platte to Kearney in two hours. If,

4. "And so we hold we have the power to review the order of a trial judge refusing to set aside a verdict as excessive. If we reverse, it must be because of an abuse of discretion. If the question of excessive-ness is close or in balance, we must affirm. The very nature of the problem counsels restraint." Dagnello v. Long Island R. R. Co., supra, at page 806 of 289 F.2d.

therefore, the bus was a freight-carrying vehicle within the meaning of § 39–723.01, it was exceeding the speed limit prescribed for that vehicle by the Nebraska statute.

We find no substance in this point. Solomon's failure to assign as error the court's refusal to give the requested instruction encounters the barrier of Rule 51, F.R.Civ.P., 28 U.S.C.A. Coca Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 203 F.2d 859, 862. Furthermore, we are not convinced that a passenger bus occasionally carrying small amounts of special "freight" is the kind of vehicle to which the statute is directed. No Nebraska authority supporting the appellant's position is cited and, in its absence, we share what must have been the trial court's view that § 39–723.01 concerns only a vehicle with a tow and a vehicle which is essentially a carrier of freight and that it is not directed to a passenger bus of the kind here involved. Compare State v. Public Service Commission of Wisconsin, 207 Wis. 664, 242 N.W. 668, 676.

6. *The exclusion of the Wakley testimony.* Guyton testified at the trial that as he approached the scene of the accident he saw to his right the Solomon truck going east on a road parallel to the highway, that he saw it "go down to the corner and turn North and cross the tracks and stop at the stop sign", and that "it was about three-quarters of a mile that I saw the truck but I had him in view". Solomon's witness Wakley, another of its truck drivers, was asked " * * * about where you have to be on that highway, as far as the mill is concerned with that cornfield there and these buildings, before you can look over and see a vehicle traveling on that graveled road East?" This was objected to by Greyhound on the ground that there was no showing that Wakley was driving a vehicle similar to the bus. The objection was sustained and Wakley's answer was not forthcoming. No objection, however, was made by Guyton. Solomon now claims that the purpose of the question was to refute Guyton's prior testimony.

It cites authorities to the effect that even incompetent evidence, if admitted without objection, may be considered and that failure to object waives the objection.

Solomon's authorities concern the situation of admitted evidence rather than excluded evidence. So far as the record before us shows, Solomon was content not to point out specifically his claim of admissibility as against Guyton, not to press the matter further, and not to make the offer of proof suggested by Rule 43(c), F.R.Civ.P., 28 U.S.C.A., and thereby to bring its point sharply and informatively to the attention of the trial court. We have held generally that the rejection of testimony is not reviewable in the absence of an offer of proof. Cavanaugh v. Fireman's Fund Ins. Co., 8 Cir., 197 F.2d 853, 855; United States v. Stoppelmann, 8 Cir., 266 F.2d 13, 20; Johnson v. Hill, supra, at page 115 of 274 F.2d. This is not a situation where the certainty of what Wakley's answer would be was such that the making of an offer could properly be regarded as a mere futility. Hawkins v. Missouri Pac. R. Co., 8 Cir., 188 F.2d 348, 350. The appellant has no basis for complaint as to the trial court's action on this point.

7. *The admission of testimony as to Guyton's driving experience, skill and reputation.* Guyton testified that he had driven close to 2 million miles for Greyhound since 1929. Over Solomon's objection as to immateriality the court permitted him also to testify that he had never had a prior accident. Also over objection solely as to immateriality and incompetency it permitted Greyhound's regional manager to testify about safety awards given Guyton during the period of his employment by Greyhound and to state that "He is rated as tops as far as the company is concerned as an employee or as a person or as a driver". The court at the time did not limit the jury as to its consideration of Guyton's testimony. It did admonish the jury that the regional manager's testimony was received only for the purpose of showing the probability of Guyton's continued employment by Greyhound up to com-

450

pulsory retirement age 65 and that " * * it is not a question of what his driving habits might be on any other occasion. Your consideration will be limited to what happened on the night of this accident * * *". In the final instructions no mention was made as to the limited purpose of this evidence.

 The parties agree that a person's reputation as a driver is irrelevant and inadmissible to prove or disprove negligence. Holberg v. McDonald, 137 Neb. 405, 289 N.W. 542, 543. Solomon's confinement of its objections to the generality of immateriality and incompetency and its failure to propose requested instructions outlining what it felt were the proper limitations in the use of the testimony in question leave us with no basis for reversal. Rules 46 and 51, F. R.Civ.P., 28 U.S.C.A. "Objections to the admission of evidence must be specific in federal courts". Taylor v. Taylor, 8 Cir., 211 F.2d 794, 797; Een v. Consolidated Freightways, 8 Cir., 220 F.2d 82, 87–88. Furthermore, even if the admission of this evidence and the court's failure on its own to include a precautionary comment in its final instructions were error, we would consider it, under the circumstances here, as harmless error within Rule 61, F.R.Civ.P., 28 U.S. C.A. We note, for what it is worth, that Fisher, as Solomon's witness, testified on direct examination that he was still working for Solomon, that he was going back to work again on the alfalfa that summer, and that he had never had an accident before with that or any other truck. Barton v. Wilson, 168 Neb. 480, 96 N.W.2d 270, 276, cited by Solomon is not controlling.

We have considered each and all of the other points which the appellant has raised. We have carefully read its brief, the record and the supplemental record, and we have studied the exhibit material which has come before us. We find these other points without merit and not of sufficient importance to require detailed comment.

Affirmed.