Dortha DEES, Individually and as Administratrix of the Estate of W.J. Dees, Plaintiff,

v.

ALLIED FIDELITY INSURANCE COMPANY OF INDIANA, Defendant.

No. LR–C–82–378.

United States District Court, E.D. Arkansas, W.D.

March 19, 1985.

Phillip J. Duncan, Thomas Bramhall, Little Rock, Ark., for plaintiff.

Robert M. Cearley, Jr., Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

EISELE, Chief Judge.

Pending before the Court is the defendant's "Motion for Judgment Notwithstanding the Verdict and Alternate Motion for New Trial." In reaching the decisions expressed below, the Court has considered the motion, the plaintiff's response thereto, and the various briefs submitted by the parties. It has also reviewed the statements made by the Court to the jury during the trial and the jury instructions. Except for the issues raised with respect to the excessiveness of the verdict, the Court concludes that there is no merit in the defendant's contentions and feels that little discussion thereof is needed.

Basically, the Court agrees with the arguments and the law cited by the plaintiff in connection with the issues raised.

The Court has no quarrel with the law as stated by the defendant in its brief with respect to the standards to be applied and

the factors to be considered in passing upon motions for judgment n.o.v. and in passing upon motions for a new trial.

■ Although defendant argues strongly to the contrary, this case was pled and tried as an action in tort for conversion. It is true that the defendant came into the possession of the plaintiff's funds lawfully and pursuant to an agreement between the parties. However, it retained those funds without any legal justification for at least two years after it was required to return same. The evidence would clearly permit the jury to find that the defendant engaged in an outrageous course of conduct in dealing with Mrs. Dees from 1981 forward. The jury could find, and obviously did find, that the defendant engaged in affirmative acts of malicious conduct in retaining and refusing to return Mrs. Dees' property and by its conduct in making baseless demands upon her, temporizing and "playing games" with her while being fully aware of her dire economic circumstances. And the evidence would sustain the jury's finding that such actions by the defendant persisted in spite of multiple pleas and entreaties on behalf of Mrs. Dees for the return of all or at least some of her money.

■ The case was neither alleged or tried as a breach of contract action. Defendant is not contending and cannot contend that it was holding the money pursuant to any provision of any contract. The defendant not only delayed for an unreasonable time in returning Mrs. Dees' funds; it *never* returned those funds even though, by the undisputed evidence and its own admissions, it was required by law to do so. It should be noted in passing that, under Arkansas law, liability in tort may co-exist with liability in contract arising out of the same events. The plaintiff chose to proceed on the basis of the tort.

The final conversion of Mrs. Dees' BUF funds occurred not later than February 1982. Indeed, as to almost all of those funds, it is clear that they should have been returned much earlier. The brazenness of the defendant's conduct is obvious when one notes that the defendant never, either before or during the trial, offered to return the money it knew was due to the plaintiff. The jury could only assume that, without a court order, the defendant would persist in holding Mrs. Dees' funds because of its selfish interests. See discussion of the defendant's handling of BUF accounts, infra.

One of the defendant's affirmative acts of misconduct was to insist, without any legal justification, upon Mrs. Dees executing a particular type of release that was not provided for or called for in its original agreement with Mrs. Dees and which it was clearly not entitled to under the law.

The evidence showing the manner in which the defendant handled the BUF accounts (in the sum of millions of dollars) bore directly upon the motive of the defendant in improperly and unlawfully retaining such funds long beyond the dates when by law they should have been returned. The evidence would clearly permit the jury to not only find that the defendant's bank profited greatly, but that the defendant and its president indirectly benefited financially from the improper manner in which the defendant handled the BUF accounts.

■ The defendant complains about the Court's ruling that it occupied a limited fiduciary relationship to the BUF account owners which would have required it to invest such funds at considerably higher, yet safe, returns. Its failure to discharge this duty resulted in substantial losses to the BUF account owners and created the conditions pursuant to which it could work out financial arrangements which were very advantageous to both its bank and to itself. The Court's ruling on this issue would have relatively little consequence financially to Mrs. Dees. It would have, in effect, called for a higher interest rate on her BUF accounts. The plaintiff, however, abandoned such claim and no such excess interest is included in the judgment. Nevertheless, the Court concludes that its rulings were correct with respect to the limited fiduciary obligations involved. Furthermore, since the issue was one that was raised and developed at the trial, the Court was correct in advising the jury of its rul-

ing and that it was removing that issue from the jury's consideration. The Court believes, under the evidence, that its explanation to the jury was both correct and necessary so that the jury would not be confused as to whether or not it should deal therewith.

Having reviewed the record, the Court finds that there was ample evidence to support the jury's liability determinations including those that would give rise to an award of punitive damages. Punitive damage under Arkansas law is available in a conversion case of this type where there is an intentional violation of a person's right to his property. Furthermore, the Court concludes that its instructions on the punitive damage issues were correct under Arkansas law and, in fact, somewhat more favorable to the defendant than required by Arkansas law.

The Court agrees with the plaintiff that the defendant did not properly raise most of the objections it is now making to the Court's jury instructions. Nevertheless, it also is convinced that those instructions properly state the applicable law.

The plaintiff has set forth in her briefs a detailed statement of much of the evidence which supports the verdicts of the jury. Except with respect to the size of the verdicts, which will be discussed below, the Court agrees that the evidence fully supports the findings implicit in the jury's verdicts.

## EXCESSIVENESS OF COMPENSATORY AND PUNITIVE DAMAGE AWARDS.

The defendant vigorously challenges the jury's verdicts for both compensatory and punitive damages. The cases which the Court has examined for guidance with respect to these issues include the following: *Century "21" Shows v. Owens*, 400 F.2d 603 (8th Cir.1968); *Krall v. Crouch Bros.*, 473 F.2d 717 (8th Cir.1973); *Malandris v. Merrill Lynch*, 703 F.2d 1152, (10th Cir. 1981); *Morrill v. Becton, Dickinson & Co.*, 747 F.2d 1217 (8th Cir.1984); and the Arkansas law and cases cited by the parties in their briefs.

Awards for punitive or exemplary damages are subject to revision by the Court to the same extent as awards of compensatory damages. *See e.g., Holmes v. Hollingsworth*, 234 Ark. 347, 352 S.W.2d 96 (1961).

There is an Arkansas statute dealing with the subject of excess. See Section 27–1903, Ark.Stat.Ann. which reads as follows:

**27–1903. Excessiveness of damages—Remittitur—When verdict set aside.—** The verdict of any jury rendered in any action for the recovery of damages where the measure thereof is indeterminate or uncertain, shall not be held to be excessive, or be set aside as excessive except for some erroneous instruction, or upon evidence, aside from the amount of the damages assessed, that it was rendered under the influence of passion or prejudice. Provided, that the circuit judge presiding at the trial may on motion for a new trial filed by the losing party, if he deems the verdict excessive, indicate the amount of such excess, and thereupon, if the losing party shall offer to file and enter of record a release of all errors that may have accrued at the trial if the prevailing party will remit the amount so deemed excessive, and the prevailing party shall refuse to remit the same, the verdict shall be set aside. (references omitted).

The defendant argues here that the compensatory damage award of $750,000 and the punitive damage award of $1,600,000 are plainly shocking. It attributes the result to certain erroneous rulings by the Court and, more importantly, to what it deems to have been improper arguments made by the plaintiff's attorney to the jury at the conclusion of the case.

The Court has carefully reviewed the evidence and the arguments of the attorneys and finds that both of the awards are, indeed, excessive. It is further convinced that the liability determinations of the jury are not tainted, the only error being in the size of the verdicts.

■ The Court upon its own, at the conclusion of the case, directed a verdict in favor of the plaintiff for the return of her BUF accounts together with interest.

However, that determination did not conclude the case. The Court pointed out to the jury that two issues remained:

The plaintiff claims that, as a direct and proximate result of the defendant's wrongful, and allegedly intentional, willful and wanton refusal to return her BUF funds, she has sustained and suffered mental anguish and other mental, emotional and physical injuries and that she is entitled to compensatory damages therefor. Lastly, plaintiff is also claiming punitive damages. These claims for additional compensatory damages and for punitive damages will now be submitted to you, the jury, for decision under the applicable principles.

This ruling led to the inclusion of the following jury instructions, among others:

The plaintiff claims that, as a direct and proximate result of the defendant's wrongful, and allegedly intentional, willful and wanton refusal to return her BUF funds, she has sustained and suffered mental anguish and other mental, emotional and physical injuries and that she is entitled to compensatory damages therefor. Lastly, plaintiff is also claiming punitive damages.

I remind you that the plaintiff has the burden of proving her position with respect to each of the two issues which will now be submitted to you. That is, she has the burden of proving:

a. That she suffered the additional compensatory damages she claims occurred as a direct and proximate result of defendant's conversion of, and wrongful retention of, her funds.

b. And that she also has the burden of proving that she is entitled to punitive damages.

Compensatory damages are awarded to make good, or replace, the loss caused by the wrong. Plaintiff alleges that defendant's conversion of and wrongful retention of her money caused her mental anguish or mental distress. Under the law applicable to this case plaintiff may be awarded such damages *only* if you find that Allied acted willfully and wantonly in converting and wrongfully re-

taining her money. An act or failure to act is "willfully" done if done voluntarily and intentionally. An act or failure to act is "wantonly" done if done in reckless or callous disregard of, or indifference to, the rights of one or more persons, including Ms. Dortha Dees.

Plaintiff is also claiming punitive damages. Punitive damages may be imposed to punish a wrongdoer for some extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct. If you should find that defendant's acts in converting and in wrongfully retaining plaintiff's funds were maliciously, or wantonly, or oppressively done, then you may award punitive damages.

Before you can impose punitive damages you must find that Allied knew or ought to have known, in the light of the surrounding circumstances, that its conduct would naturally or probably result in injury and that it nevertheless continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred.

An act or a failure to act is "maliciously" done, if prompted or accompanied by ill will, or spite, or grudge, either toward Ms. Dortha Dees individually, or toward all persons in one or more groups or categories of which Ms. Dortha Dees is a member.

An act or a failure to act is "wantonly" done, if done in reckless or callous disregard of, or indifference to, the rights of one or more persons, including Mrs. Dortha Dees.

An act or a failure to act is "oppressively" done, if done in a way or manner which injures, or damages, or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, or disability, or misfortune of another person.

You may not award punitive damages if you find, on the other hand, that Allied's refusal to return her build-up fund was based upon a good faith belief that it had the legal or contractual right to retain

the build-up funds unless and until Mrs. Dees signed the Agreement to Distribute Indemnity Funds. Neither may you award punitive damages if you find that the refusal of Allied to return the build-up fund was based upon honest errors of judgment or the mistaken belief that it had no legal or contractual responsibility to do so.

Whether or not to make any award of punitive damages is a matter exclusively within the province of the jury if you should find from a preponderance of the evidence in the case, that the defendant's acts or omissions were maliciously, or wantonly or oppressively done.

You are not required to assess punitive damages against the defendant, but you may do so if justified by the law and the evidence.

The Court will not detail the evidence concerning the physical and emotional impact of the defendant's outrageous conduct upon Mrs. Dees. The plaintiff has fairly set forth same in her post-trial briefs. Suffice it to say that the evidence is that she suffered severe mental anguish and emotional harm resulting in physical and mental symptoms. The jury has made an award of $750,000 which, of course, is in addition to the award made by the Court for the return of her BUF funds together with interest.

As stated in the *Century "21"* case:

This Court has consistently held "that the responsibility for keeping jury awards within reasonable bounds is essentially that of the trial courts and not that of this Court." (citations omitted) "The assignment of error that the verdict is excessive is not properly addressed to this court," *New York, C. & St. L.R. Co. v. Affolder*, 174 F.2d 486, 493 (8 Cir. 1949), and cases cited, reversed on other grounds 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683 [1950].

The excessiveness of a verdict is a matter primarily directed to the judgment and the conscience of the trial judge on motion for a new trial. *St. Louis Southwestern Ry. Co. v Ferguson, supra,* 182 F.2d [949] at page 954 [8 Cir.1950]. The

question of the size of the verdict is to be considered by the trial judge in a motion for a new trial. [footnote: "We do emphasize again, however, that in our opinion, inadequacy or excessiveness of a verdict is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; and that we shall continue to consider review, as we have said before, not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is 'plain injustice' or a 'monstrous' or 'shocking' result." *Solomon Dehydrating Company v. Guyton*, 294 F.2d 439, 447, 448 (8 Cir.1961) ] It is within the discretion of the trial judge whether or not to allow the verdict. *Solomon Dehydrating Company v. Guyton*, 294 F.2d 439 (8 Cir.1961). We, of course, may consider and *alter* the findings of the trial court when it is clear that injustice has resulted due to an abuse of discretion on the part of the trial judge, as "where the verdict is so manifestly without support in the evidence that failure to set it aside amounts to an abuse of discretion."

And in *Krall* we note the following language:

Defendant claims on this appeal that the verdicts of the jury on the issue of damages for the three plaintiffs were "... flagrantly excessive, so out of reason as to shock the conscience or sense of justice, resulted from passion, prejudice and the verdicts are a plain injustice [and] ... are not sustained by sufficient competent evidence in the record;" the verdicts awarded Barbara Ludvicek and Galen Ludvicek were so manifestly without support that the trial court abused its discretion in not setting aside the verdicts and ordering a new trial; the verdict awarded the estate of Leo Frank Ludvicek was not based upon competent evidence and was not supported by the

record and therefore the trial court should have ordered a new trial or directed a remittitur.

■ We adhere to the standard of review in this Circuit expressed in *Solomon Dehydrating Co. v. Guyton*, 294 F.2d 439, 447–448 (C.A.8 1961), *cert. denied* 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192, that excessiveness of a verdict is basically a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witness and which knows the community and its standards; and that we would continue to review cases of excessive verdicts, "not routinely and in every case, but only in those rare situations where we are pressed to conclude that there is 'plain injustice' or 'monstrous' or 'shocking' result." (citations omitted)

■ We have reviewed the record and although the eixsting verdicts appear quite generous, we are not prepared to say they are legally excessive. Little purpose would be served in detailing the various facts in the record which tend to support or negate the size of each verdict. Suffice to say we are not convinced the result is "shocking" or "plain injustice." We recognize that this tragic accident left emotional scars that surfaced during the trial. The responsibility for weighing the many factors involved in determining whether the verdicts were excessive is best placed with the trial court. After reviewing this record we decline to interfere with the trial court's action.

\*    \*    \*    \*    \*    \*

■ Finally, defendant argues that the trial court's order of remittitur of approximately 50% of the jury's verdicts for Barbara and Galen Ludvicek upon the grounds that the verdicts were not supported by the evidence and were excessive demonstrates that the Court must have concluded a large part of the excessive verdicts resulted from undue sympathy and therefore defendant's motion for a new trial should have been sustained. As already indicated, we do not find that the trial court abused its discretion in making the determinations which it did.

Based on all the facts and circumstances, the Court is convinced that it should require a remittitur to reduce the $750,000 award to $250,000. If the plaintiff declines to accept the reduced judgment there should be a new trial upon all of the issues.

■ Turning to the $1,600,000 award of punitive damages, the Court notes that the defendant company apparently has a net worth of approximately $3.3 million. The function of punitive damages is not to destroy the economic viability of the defendant. In fact, insofar as one of the purposes is to deter similar conduct in the future by the defendant, the award implicitly should not be such as to result in confiscation or in the destruction of the defendant's ability to continue as a viable enterprise. The Court finds some guidance in the following language of *Morrill v. Becton, Dickinson and Co.*:

### Amount of punitive damages

B–D's final point on appeal is that the punitive damages award is excessive and the result of improper and prejudicial argument, and that the district court therefore erred in not granting B–D's motion for a new trial.

We recognize that the amount of a punitive damages award is a decision which rests peculiarly within the discretion of the jury, (citations omitted) and that excessiveness of a verdict is basically a matter for the trial court. The trial court's determination that a new trial should not be granted on the ground of excessive punitive damages will not be upset on appeal unless the jury award would result in plain injustice, or a "monstrous" or "shocking" result.

Keeping in mind all the relevant factors in reviewing a punitive damage award, (citation omitted) we hold that the award of $20,000,000 in the present case is excessive and cannot stand. We do not believe, however, that the contract and fraud liability determinations and awards of actual damages were tainted and that a new trial need be ordered. Under the circumstances remittitur is the proper

remedy. (citations omitted) Accordingly, we require a remittitur to reduce the punitive award to $3,000,000 for the judgment to stand. If Morrill declines to accept a reduced judgment, there should be a new trial on the issue of punitive damages.

Keeping in mind all of the relevant factors, the Court holds that the award of $1.6 million in punitive damages is excessive and cannot stand. However, the Court is convinced that the underlying liability determinations were not tainted and that therefore a new trial need not be ordered. Remittitur is the proper remedy. Accordingly, the Court requires a remittitur to reduce the punitive damage award to $500,-000. If the plaintiff accepts the remittitur of the actual damage award (see above) but declines to accept the reduced judgment for punitive damages, there will be a new trial solely on the issue of punitive damages.

Plaintiff will make her decisions known to this Court by filing the appropriate acceptance or rejection of (a) the compensatory damage remittitur and (b) the punitive damage remittitur on or before March 29, 1985.